[Civ. No. 3791. Third Appellate District.—September 24, 1929.]

D. A. MIDDLECAMP, Respondent, v. I. G. ZUMWALT, Appellant.

U. W. Brown for Appellant.

George R. Freeman for Respondent.

PLUMMER, J.—The plaintiff began this action to recover possession of a certain "Harris" harvester and 55–horsepower motor, together with certain appurtenances described in the complaint, constituting a harvesting outfit, and in the event possession could not be had, then for the recovery of $2,000 as damages. The complaint alleges that on the twenty-first day of March, 1928, the plaintiff was in the actual possession and entitled to the possession of said property. To this complaint the defendant made answer setting up conditional contracts showing that the property involved was sold by the defendant to the plaintiff upon a conditional note and contract containing the following provisions (it may be stated that the transcript shows a lease contract and a promissory note incorporated into a contract, but as both agreements are identical in substance, we will treat the two instruments as one): Exhibit "B," being the contract containing the promissory note, we take the facts therefrom as follows: On May 1, 1925, the plaintiff executed and delivered to the defendant a promissory note, under the terms

and conditions of which the plaintiff promised, one day after date, to pay to the defendant the sum of $4,250, together with interest thereon from date until paid at the rate of eight per cent per annum, interest payable at maturity and every six months thereafter, and if not so paid, to be added to the principal and bear interest at the same rate. The note also contained provisions for attorney's fees in the event suit was instituted. It was also provided in the note that the maker and indorser waived presentment for payment, protest, notice, etc. The writings to which we have referred also provided as follows: That if one-half of the gross earnings of the harvester and tractor in harvesting grain should be promptly paid by the plaintiff to the defendant, then and in that case the note might run until August, 1926. It was further provided in the agreements that any equipment, repairs or accessories placed upon the personal property by the purchaser during the continuance of the agreements should become a component part thereof and the title thereto immediately vested in the vendor of the property heretofore referred to, and should be covered by, and included in, the terms of the agreements. The writings just mentioned provided that if the purchaser should fail to make payment as provided therein, then and in that case the seller, at his option, without notice, might exercise either one of the following remedies: (a) He might declare the entire remaining unpaid purchase price and interest to be immediately due and payable and sue therefor; or (b) he might, without notice, retake possession of said personal property, and without notice, resell the same at public or private sale, and after deducting all expenses, etc., credit the net proceeds thereof to the unpaid balance on the note herein mentioned, and that the purchaser agreed to pay the seller any deficiency remaining after such sale is completed and net proceeds applied; or "(c) that the seller might take immediate possession of the said personal property, equipment, repairs or accessories, wherever and whenever found, and without notice or demand, declare the purchaser in default, and in such event, all of the rights, titles and equities of the purchaser in and to said property should immediately cease and terminate, and said seller and his assigns released from all obligations to transfer or deliver said personal property to said purchaser, and all sums of money theretofore

paid and then due and unpaid by the purchaser to said seller shall remain the sole property of said seller, . . . and be considered as compensation for the use, wear, tear and depreciation of said personal property by said purchaser, and said purchaser agrees to forthwith pay to said seller or his assigns, all payments of interest then due and unpaid, as part compensation for the use of said personal property, as aforesaid.'' The agreements made time the essence thereof. The plaintiff had judgment for the sum of $1271.11, and from this judgment the defendant appeals. The instruments to which we have referred by credits entered thereon, and the testimony contained in the transcript show that the plaintiff paid upon said promissory note, on July 6, 1925, the sum of $500; on July 20, 1925, the sum of $1100; on July 27, 1925, the sum of $600; and that on June 28, 1926, there was entered upon said note a credit of the amount of $323, being that much credited on the note out of a sum of $700 which was paid by the plaintiff to the defendant on an open account. The payment made on June 28, 1926, apparently covered the interest on the note up to the date of June 28, 1926, the day that the credit for that amount was entered upon the note. It thus appears that all of the payments referred to were made prior to the first day of August, 1926, the date on which the note became due, according to the terms of the agreements entered into between the parties.

After finding the facts concerning the conditional sale of the property to which we have referred, the court found as follows: That ''in the year 1926, the defendant extended the time of payment of said note to August 1, 1927, and prior to August 1, 1927, again extended the time for payment to August 1, 1928; that the plaintiff was in the actual possession of said harvester above described on the 21st day of March, 1928, on which date the defendant, without plaintiff's consent, wrongfully took said property from the possession of the plaintiff; that at no time prior to said 21st day of March, 1928, did the defendant exercise any right to retake possession of said property, nor did he notify plaintiff of his intention so to do at any time until he actually took possession of said harvester, nor did he, at any time, give any notice to the plaintiff requiring the payment to be made of the balance of said purchase price; that during the

period intervening between August 1, 1926, and March 21, 1928, plaintiff expended money and labor in caring for said harvester and the appurtenances thereto, and housed the same on his ranch during a portion of said period of time, to his prejudice, and, by his failure to exercise his right to terminate the rights of the plaintiff in and to said harvester, and under said contract, until March 21, 1928, defendant waived his right so to do under said contract.'' The court further found that the plaintiff had performed all of the conditions of said contract with the defendant which were to be performed by the plaintiff, except those conditions which were waived by the defendant, and that the amount unpaid on said contract at the time of its taking by the defendant was the sum of $1978.89.

The only support to the findings referred to found in the record is the oral testimony of the plaintiff that during the year 1926, the time of the maturity of the note was extended for one year, which would make the note payable on August 1, 1927. The testimony of the plaintiff upon this point is as follows: ''In 1926 the crop was light and there was not much harvesting; the barley was cheap—I had quite a little barley of my own and I could see, before I got through harvesting, I was not going to be able to meet that note without selling my barley, and the barley was too cheap; I could not make anything out of it, so I asked Zumwalt for an extension of time, and he said he would give me another year's time on the harvester, so I did not pay off the note by August 1, 1926.'' As to the extension of time from August 1, 1927, to August 1, 1928, the testimony of the plaintiff is as follows: ''I was in Zumwalt's office in the fore part of June, 1927, and the barley harvest was light the last year, and I had quite a lot of wheat in, too; I didn't make a deal where I could harvest it; I was in a little jam on it, so I asked Zumwalt if he would grant me an extension of time for another year on this, and he said he would, and I told him I could take it and harvest some other grain, but didn't want to take it out because about the time I would get to harvesting I was afraid the man that had a mortgage on the wheat crop would not advance me money enough to harvest it.'' The testimony further shows that during the year 1927 the plaintiff threshed a small quantity of corn and put some plates and chains on the machine with which to harvest his

crop of corn; that the harvester and other machinery was kept housed on a place called the "Jameson" place. There is nothing in the testimony to show that the plaintiff did anything with relation to the machinery and property involved in this action, during the years 1926, 1927 and the portion of the year 1928 before it was taken possession of by the defendant, which was not covered by the terms of the agreement, in relation to repairs that might be made thereon, nor that it was housed or kept at any place by the plaintiff at the request of the defendant, or that any expenditures were made thereon by the plaintiff at the request of the defendant. The property simply remained in possession of the plaintiff during that period of time, as provided for in the conditional sales agreement. It specified that possession might be taken by the plaintiff, but that title thereto should remain vested in the defendant. The defendant denied the testimony of the plaintiff as to the conversation relating to the extension of time, stating that no such conversation took place. On the twenty-first day of March, 1928, the defendant took possession of the property covered by the conditional contract of sale, without giving notice to the plaintiff, and between that date and the twenty-sixth day of March, 1928, sold the same to a third party by the name of Steidlmayer. On a date not given, but prior to the twenty-sixth day of March, 1928, the plaintiff had a conversation with the defendant relative to the plaintiff paying up the balance due on the note referred to herein, and being replaced in possession of the property. It appears from the testimony of the defendant that the defendant agreed to see Mr. Steidlmayer and ascertain if he, Steidlmayer, would release the defendant from the sale of said property that had been made to him by the defendant, and that he, the defendant, would resell the property to the plaintiff, provided the plaintiff would agree to take care of an old note in the sum of something in excess of $1200, which the plaintiff owed the defendant, and which note had apparently outlawed. According to the defendant the plaintiff refused to enter into any such agreement. Thereafter, and on the twenty-sixth day of March, 1928, after the property had been taken possession of by the defendant as herein stated, and after it had been sold by the defendant to Steidlmayer, the plaintiff tendered to the defendant a cashier's check covering the unpaid balance of the

promissory note to which we have referred, acceptance of which was refused by the defendant. Thereafter, the plaintiff began this action, as heretofore stated, and had judgment in his favor.

In support of the judgment the respondent cites a number of cases beginning with *Stevinson* v. *Joy,* 164 Cal. 279 [128 Pac. 751], to the effect that where a contract of conditional sale contains provisions for the payment of installments on certain dates, and the payments are not made on those dates, that the acceptance of payment after the dates mentioned without objection may constitute a waiver of the right to declare the whole amount of the obligation due, and repossession of the property taken and forfeiture declared for failure to comply with the terms of the contract. ■
There seems to be no question but what the law is well settled that a waiver of strict compliance with the terms and provisions of a conditional sales contract providing for installment payments may be made so as to prohibit the vendor from declaring a forfeiture on account of the failure to pay an installment promptly upon the date fixed in the contract.
■ However, there seems to be no necessity to review the cases having to do with installment payments and the waiver of the right of the vendor to insist upon prompt payment, because the record in the instant case discloses nothing of that kind. Not a single payment appears to have been made upon the note after August 1, 1926. Upon that date the entire sum of the note was due. There were no installments remaining to be paid after that date. The note was due in its entirety, and if there was no extension of time, then and in that case the defendant possessed the right, under the contracts to which we have referred, to take possession of the property without notice and sell the same without notice. The defendant in this case took possession of the property without notice, and as subdivision "c" of the contract provided that he might do, thereafter declared a forfeiture and proceeded to sell the same. The oral testimony relating to the extension of time upon which the court found that the time of payment of the note was extended, is relied upon by the respondent as a waiver of the right of the defendant to demand payment or insist upon a forfeiture or proceed to take possession of the property until after August 1, 1928. The testimony of course shows that it was in no sense a

waiver. It was simply, if anything, an oral agreement for the extension of time of payment of a promissory note. In the first place the testimony shows, and the record conclusively establishes, that there was no consideration of the promise to extend the time of payment of the promissory note in the event such promise was made. Section 1550 of the Civil Code provides that every contract must have a sufficient consideration. Whether the contract made in 1926, extending the time of payment of the promissory note until August 1, 1927, was or was not made as alleged by the plaintiff and found by the court falls within the category of an executed contract, is wholly immaterial from the fact that under the provisions of section 1550 of the Civil Code it never did rise to the dignity of an enforceable agreement and did not constitute, for lack of consideration, an extension of time.

The court found that prior to August 1, 1927, the defendant extended the time of payment of the note until August 1, 1928. This finding is based upon the oral testimony to which we have referred. Likewise, there is an absolute want of consideration for any such extension of time. This so-called extension of time being oral and not to be performed within one year, is void, as contrary to the statute of frauds, and, furthermore, is violative of the terms of section 1698 of the Civil Code, which reads: "A contract in writing may be altered by a contract in writing or by an executed oral agreement, and not otherwise." It is thus seen that the finding of the court as to the extension of time has no support in the testimony. While it does not seem necessary to cite authorities in addition to section 1550 of the Civil Code, with regard to the lack of consideration, we may call attention to the case of *Lynch et al.* v. *Sable, etc.*, 122 Or. 597 [55 A. L. R. 180, 260 Pac. 222, 223], where an automobile was sold upon a conditional contract and the property repossessed by the vendor, and the buyer claimed that the seller had promised to hold it as security until the balance of the purchase price was paid. The court said: "Plaintiffs rely upon a claim that defendant promised to hold the automobile, after it repossessed itself thereof, as security for the unpaid purchase price. Plaintiffs claim that defendant so promised to hold said automobile for plaintiffs until the 10th day of

September. They allege in their complaint that this promise was made for a valuable consideration. A careful reading of the testimony, however, fails to disclose any consideration for the alleged promise relied upon by the plaintiffs. The sole testimony of this feature of the case is an interview between one of the plaintiffs and the president of the defendant, on a street in the city of Portland. There is no testimony of anything of value having passed between them at that time. Plaintiffs do not claim that they paid any amount as earnest consideration. If the alleged agreement was supported by any consideration, this court would be bound by the verdict of the jury. But inasmuch as there was no consideration for the promise on the part of the defendant to so hold the automobile, its promise cannot be enforced in law. The complaint shows on its face that the title thereto was vested in the defendant.'' The record here shows that the title to the property involved was vested in the defendant. Again, if the promise made in 1927 to extend the time of payment of the promissory note to August 1, 1928, had any consideration to support it, it would still be vulnerable from the fact that it was not an executed oral agreement. The time for it to become an executed agreement, if otherwise valid, would have been August 1, 1928. ■ The record does not show that any objection was made to the introduction of the testimony of the plaintiff as to the conversation relating to the extension of time of the promissory note. However, under the following authorities it would seem that the objection may be considered as a matter of law. In the case of *Dollar* v. *International Banking Co.,* 13 Cal. App. 331 [109 Pac. 499, 504], the court having before it the question as to whether a writing might be varied by parol evidence, held parol testimony introduced without objection, insufficient to change the terms of the writing, and in so doing, used the following language: ''Whether or not a contract in writing may be varied by parol evidence is a question of substantive law, while the admission or rejection of secondary evidence is governed by the rules of evidence.'' (Citing Greenleaf on Evidence.) ''Where a contract is reduced to writing, whether required by law to be written or not, the writing supersedes all other negotiations and stipulations concerning the matter made at the time or prior thereto.'' Again, in

the case of *Rottman* v. *Hevener*, 54 Cal. App. 474 [202 Pac. 329, 331], where it was contended that the time of payment of a promissory note had been extended by an agent of the defendant, the court used the following language: "Equally unavailing as a defense is the fact, if it be a fact, that subsequently to the execution of the promissory note plaintiff's agent again told defendant that the instrument would not become payable until payment should be demanded. Under the statute of this state, Civil Code, section 1698, a contract in writing may be altered by a contract in writing or by an executed oral agreement, and not otherwise. Therefore, whatever may be the rule in jurisdictions where there is no such statutory provision, it is the established rule in this state that the time of payment as fixed by the written contract may not be suspended or extended by a subsequent unexecuted oral agreement." (Citing a number of cases.) In the case of *Henehan* v. *Hart*, 127 Cal. 656, the court, on page 658 [60 Pac. 426, 427], points out the change of the statute, and says: "The section as amended lays down a valuable and salutary rule in regard to written instruments. It prevents the parties who have made a promissory note, after it has become due according to the time written therein, from making the defense that it is not due by reason of a parol promise to extend the time, which promise would depend upon the credibility of interested witnesses." To the same effect is the case of *Estes* v. *Delphes*, 73 Cal. App. 643 [238 Pac. 1085], as is also the case of *Rathbun* v. *Security Mfg. Co.*, 82 Cal. App. 793 [256 Pac. 296], where such testimony was introduced for the purposes of explaining or excusing nonperformance, and also upon the claim that the other party was estopped to take advantage of the nonpayment of the note when due. It was held that such contention was without merit. The cases heretofore referred to are cited in the opinion in that case on page 795 of 82 Cal. App., *supra*. (See, also, *Pacific etc. Co.* v. *Steiner*, 192 Cal. 376 [220 Pac. 304].)

No question of estoppel is raised or pleaded in this case, no question of fraud; no question of being misled is raised or tendered; but the simple fact of an extension of time of payment, which we think the authorities herein cited show to be without merit. ■ The finding of the court that the plaintiff had performed all the conditions on his part

to be performed is shown to have no support by any testimony contained in the record. Nor do we find anything in the record to support the following, contained in one of the findings: "And by his failure to exercise his right to terminate the rights of the plaintiff in and to said harvester under said contract, until March 21, 1928, defendant waived his right to do so under said contract." No authorities have been cited, and we think none can be cited to the point that mere failure to proceed to collect a promissory note after it has become due is a waiver of the right to make collection. At least not until the statute of limitations has run would the right of the holder of a promissory note, under such circumstances, be barred or held to have waived the right to seek payment and enforce whatever rights were guaranteed to him by the terms and conditions of the agreements entered into at the time of the sale. Mere delay cannot be held a waiver of the right to collect the amount due and payable on a promissory note. The terms of the contract entered into between the parties provided for the defendant doing exactly what the record in this case shows that he did do. The only defense is that of the alleged oral promise to extend the time of payment on the promissory note after it had become due, without any consideration whatever therefor, which defense we think, under the authorities cited, must be held to be without merit.

The judgment of the trial court is reversed.

Thompson (R. L.), J., and Finch, P. J., concurred.