[Sac. No. 4620. In Bank.—April 25, 1933.]

JAMES S. TONINI, Plaintiff and Cross-Defendant, v. LEVEN C. ERICCSEN, Defendant, Cross-Complainant and Respondent; Z. RUSS COMPANY, Cross-Defendant and Appellant.

Denver Sevier and Kenneth D. Sevier for Appellant.

Marc F. Morrison and H. C. Nelson for Respondent.

CURTIS, J.—This appeal grows out of the same case in which the appeal, Sacramento No. 4590 (*ante,* p. 39), this day decided, was taken. The two appeals bear the same title but different numbers. The case in which they arose was begun by the plaintiff Tonini against the defendant Ericcsen to restrain the latter from permitting water from Russ Creek in Humboldt County, which defendant Ericcsen had diverted on to lands in the possession of the plaintiff and for damages already sustained by the plaintiff by reason of waters escaping from defendant Ericcsen's lands on to the lands in the possession of the plaintiff. The lands of which plaintiff was in possession and for the overflow of which he sought damages against the defendant Ericcsen belonged to a corporation by the name of Z. Russ Company, which company had leased them to plaintiff. The defendant Ericcsen answered denying the allegations of plaintiff's complaint and setting up as a special defense that he was the owner of a right or easement to have the waters of Russ Creek flow and pass over and across his own lands and thence on to and upon certain lands of the said Z. Russ Company, including those in possession of the plaintiff. Ericcsen also alleged in his said answer that a complete determination of the controversy in said action could not be had without the presence of said Z. Russ Company as a party to said action. Thereafter, but at just what stage of the proceedings we are unable to determine, the court made an order requiring Z. Russ Company be made a party to said action. Afterwards, presumably, the defendant Ericcsen filed a cross-complaint and later a first and second amended cross-complaint against the defendant Z. Russ Company. We assume that these pleadings were filed, although they are not contained in the record before us, but there is on file a third amended cross-complaint filed by defendant Ericcsen in which he asserts the same rights as are set forth in his special defense, and which are stated in his third amended cross-complaint as follows: "That ever since on or about the 7th day of September, 1897, the cross-complainant and his predecessors in interest have been, and now are, the owners of and in possession of a right or easement to have the waters of Russ creek flow, pass and spread continuously and uninterruptedly over and across the said lands of cross-

complainant aforesaid, and to drain and flow continuously and uninterruptedly to tide water across, upon and over the lands and premises of said Z. Russ Company, a corporation, hereinbefore referred to, including the lands and premises occupied, controlled and possessed by cross-defendant, James S. Tonini, as aforesaid, all of which was known to cross-defendant, Z. Russ Company, and that said rights and easements are based on instruments in writing.''

By stipulation of the parties this third amended cross-complaint was filed ''as of the 30th day of November, 1929'', and that ''all of the allegations'' thereof ''be considered as denied by the cross-defendants named therein, [James S. Tonini and Z. Russ Company]''. The action was tried upon plaintiff's complaint and the answers thereto of defendant Ericcsen, and on the cross-complaint of defendant Ericcsen and the answer thereto of plaintiff and defendant Z. Russ Company. As stated in the decision of the appeal, Sacramento No. 4590, this day filed, plaintiff recovered judgment against defendant Ericcsen for the sum of $500 damages and was given judgment against said defendant Ericcsen, enjoining said defendant from interfering with the natural flow of the waters of Russ Creek in such a manner as to cause the waters of said creek to escape and flow upon the lands of the plaintiff. Upon the cross-complaint of defendant Ericcsen against the plaintiff and the defendant Z. Russ Company, the court made findings and rendered judgment in favor of said defendant Ericcsen and against said defendant Z. Russ Company. Said judgment in so far as it is material to any question raised in the instant appeal is as follows: ''It is further ordered, adjudged and decreed that said Leven C. Ericcsen is the owner of an easement and right to have waters of said Russ Creek conveyed across the said Occidental Ranch to tide water in any direction said cross-defendant may see fit to do so in a channel that will reasonably carry said waters without causing said waters to back up and overflow the lands and premises of said Leven C. Ericcsen along and adjacent to said creek from its original point of diversion as specified in said agreement to the north boundary thereof; and that said easement and right are appurtenant to, and run with and are necessary for and incident to the use and enjoyment of said lands and prem-

ises of said Leven C. Ericcsen hereinabove described, and every part thereof.''

The defendant Z. Russ Company has appealed from the judgment upon typewritten transcripts.

Appellant's first contention is that the trial court committed error in ordering said defendant Z. Russ Company to be made a party to this action and in permitting defendant Ericcsen to file a cross-complaint in this action against the defendant Z. Russ Company. A complete answer to this contention would seem to be that the record does not show that Z. Russ Company ever objected to said order of court or raised the point that the order was erroneous until the case was appealed to this court. Furthermore, upon its merits, the contention cannot be sustained. Plaintiff sought to enjoin the overflowing of land in his possession, but held under lease from Z. Russ Company. Defendant Ericcsen claimed that he had an easement to overflow certain lands belonging to Z. Russ Company, including those in plaintiff's possession. A complete determination of the controversy could only be had by bringing in the defendant Z. Russ Company and making it a party to the action. In such a case a cross-complaint was proper and the order to that effect was not erroneous. (21 Cal. Jur., p. 80; *Stockton Sav. & Loan Soc.* v. *Harrold,* 127 Cal. 612 [60 Pac. 165].)

In order to understand the controversy between Ericcsen as cross-complainant and Z. Russ Company as cross-defendant (although we will continue to refer to them either by name or as defendants following their names) a more extended statement of facts will be necessary. In September, 1897, Eli C. Ericcsen, the father of the present defendant Ericcsen, owned the east half and P. J. Petersen owned the west half of a certain forty-acre tract of land situated in Humboldt County, each operating a dairy on the land owned by him. At the same time Z. Russ and Sons, a corporation, the predecessor in interest of the present defendant Z. Russ Company, owned a seventy-acre tract of land contiguous to and directly north of the forty-acre tract owned by Ericcsen and Petersen. Said company also owned another tract of land contiguous to and directly north of said seventy-acre tract, which last-named tract was known as the Occidental ranch. In addition to these two tracts of land said com-

pany owned the land lying to the west of Petersen's land, which tract was known as the Russ Creek Dairy, and the land to the east of the Ericcsen land, which said last-named tract was in the possession of the plaintiff Tonini under lease and is the same land which the defendant Ericcsen damaged by permitting waters of Russ Creek to escape and overflow the same. At this time Russ Creek ran in a generally westerly direction across the Russ Creek Dairy, and thence to tide-water. In times of flood it carried a large amount of water heavily laden with silt, which in time had been deposited upon Russ Creek Dairy to the extent that in 1897 the Russ Company desired its course changed if possible. The seventy-acre tract just mentioned was then low and swampy land unfit for dairy uses, but which could be built up and made usable for such purposes if the sediment deposits from Russ Creek could be made available. In the month of September, 1897, Ericcsen began negotiations to purchase from the Russ Company the seventy-acre tract of land which lay immediately north of the forty-acre tract owned by him and Petersen. The purchase was made. A deed effecting such transfer was executed and delivered by the Russ Company to Ericcsen on or about September 7, 1897, and the purchase price paid. A few days later a form of contract prepared by W. N. Russ, president of the Russ Company, was submitted to Ericcsen and Petersen providing for a change in the course of Russ Creek so that said creek instead of running in a westerly course across the Russ Creek Dairy, would be diverted northerly and as so diverted it would run between the two tracts of land owned by Ericcsen and Petersen on to and over the seventy-acre tract and from there over the Occidental ranch and thence on to tide-water. This agreement was signed by them and returned to W. N. Russ. There is substantial oral evidence that it was the intention of all parties that said agreement was to be signed by the Russ Company and that Ericcsen and Petersen thought it had been executed by the company. The signature of the company was never affixed to the agreement, but on its delivery to its president said agreement was kept in the company's safe until produced at the trial of this action. Following the purchase of said seventy-acre tract and the execution of said agreement, and in the following month, Ericcsen and Petersen proceeded to change the

course of Russ Creek, and, following the terms of said agreement constructed a ditch on the line between their two properties and thence north on to the seventy-acre tract. During the period of years from 1897, when the creek-bed was changed, until the commencement of this action (1928), the water from Russ Creek was discharged through this new channel on to the seventy-acre tract, and from said tract on to the Occidental ranch where it was conducted in ditches and channels, extending in various directions constructed by the Russ Company, across the Occidental ranch and thence to tide-water. The continuous flow of the waters of Russ Creek over the seventy-acre tract and the Occidental ranch resulted in the filling in and building up of these lands. The surface of the seventy-acre tract was raised some five feet. That of the Occidental ranch was raised even higher, so that the course of the waters of said creek over the Occidental ranch was greatly impeded. This resulted in the waters of the creek being thrown back upon the seventy-acre tract and in times of high water large areas of Ericcsen's land were submerged. Ericcsen made repeated requests of the Russ Company to open up the channel of Russ Creek across the Occidental ranch so as the prevent the water from overflowing the seventy-acre tract. The company refused these requests and refused to allow Ericcsen to open up said channel. Ericcsen then attempted to so overflow his lands as to raise the surface thereof above the Occidental ranch, and in so doing he permitted water to escape on to the property leased to Tonini, with the result that the latter commenced this action to enjoin Erricsen from permitting the waters to escape on to the Tonini property. The land leased to Tonini, as we have seen, was no part of the Occidental ranch and the court held, therefore, that Ericcsen had no right to overflow it and enjoined him from so doing. As to the controversy between Ericcsen and the Russ Company, the court held that the company was estopped from denying "the validity, effect and legality of said written agreement . . . and the obligations imposed upon it [the Russ Company] by said written agreement". Judgment was, therefore, rendered in favor of Erricsen and against the Russ Company establishing his right to an easement over the lands of the Russ Company as hereinbefore set forth in full.

50

While it may not be conceded by the Russ Company, it is clear that if the Russ Company is estopped from denying the binding effect upon it of said written instrument, the judgment establishing an easement in favor of Ericcsen to have Russ Creek after it leaves the seventy-acre tract flow over and across the Occidental ranch must be affirmed. It will not be necessary to set forth said agreement in full. The names of the parties who were to execute said agreement are not recited in the body of the instrument. After certain recitals in the first part of the agreement it continues in the following language: "We, the undersigned, mutually agree that Russ Creek is to be put and kept into a permanent channel." Then follows a description of the channel. It was to commence at a certain point and then "to flow north on the subdivisional line between" the two twenty-acre tracts of land belonging to Ericcsen and Petersen "until it comes to the south boundary line" of the seventy-acre tract, "thence onto and through" the seventy-acre tract "in any direction that will cross the south boundary line of the" [Occidental ranch] "thence to tide-water in any direction that the owners of the Occidental Ranch may see fit to convey it".

█ It is clear from a casual reading of this instrument that its purpose was to provide for a new channel for the Russ Creek across the several tracts of land described therein. One of said tracts, the Occidental ranch, was owned by the Russ Company. No person could, of course, give a right of way across this particular piece of land except the owner, the Russ Company. It is also clear that Ericcsen and Petersen would not have the right to divert Russ Creek as it originally flowed in a westerly course over the Russ Creek Dairy, which was the property of the Russ Company, away from said lands and northerly on to the seventy-acre tract without the consent of the Russ Company. The agreement itself, therefore, bears internal evidence that it was the intention of the parties who were concerned in its preparation that it was to be signed by the Russ Company. For without the consent of the Russ Company no change in the course of said stream could be made by either Ericcsen or Petersen. As it was prepared by the Russ Company and given by its president to Ericcsen and Petersen for their signature and was then returned to the company, the con-

clusion is inescapable that both Ericcsen and Petersen were led to believe by the president of the company that the company would sign said agreement along with them. Had they been men of more extended business experience they would have undoubtedly demanded a copy of said agreement signed by the Russ Company for their future protection. That they did not do so, but trusted the president of the company that the latter would comply with their mutual understanding, furnishes no legitimate excuse for not holding the company to the terms of the agreement. In addition to the foregoing, as we have already seen, after the agreement was executed, the parties thereto immediately undertook to carry out its terms and provisions. In so doing the company joined with Ericcsen and Petersen in all that the latter did to divert said creek in accordance with the previous understanding of the parties. Ericcsen and Petersen at considerable expense constructed a new channel for the stream between their two twenty-acre tracts. By means of this channel they diverted the waters of the creek from the lands of the Russ Company, known as the Russ Creek Dairy, and caused them to flow northerly on to the seventy-acre tract and from said tract over, on to and through the Occidental ranch, the property of the Russ Company. After the waters of the creek had reached the Occidental ranch they were received by the company and used by it on said last-named tract as we have already stated. Under this state of facts there can be no question but that the defendant company was estopped from denying the due execution and validity of the written agreement. ■ Section 1962, subdivision 3, of the Code of Civil Procedure would seem to be directly applicable to these facts: ''Whenever a party has, by his own declaration, act, or omission, intentionally and deliberately led another to believe a particular thing true and to act upon such belief, he cannot, in any litigation arising out of such declaration, act or omission be permitted to falsify it.''

■ Then again it appears without contradiction that it was a distinct benefit to the Russ Company to have the waters of Russ Creek diverted from the Russ Creek Dairy, where they were no longer needed, and where in fact they were a detriment, and to have them flow over the Occidental ranch and thus build up and make usable the lands thereof.

It is well settled, so much so that it has been embodied in a section of our codes, that, ''A voluntary acceptance of the benefits of a transaction is equivalent of a consent to all the obligations arising from it so far as the facts are known . . . to the person accepting it.'' (Sec. 1589, Civ. Code.)

The contention is further made that the court erred in decreeing specific performance of said agreement as against the Russ Company for the reason that the defendant Ericcsen had not complied with the terms thereof. In support of this contention the appellant, the Russ Company, calls our attention to the finding of the trial court that Ericcsen failed to confine said creek within a definite channel, but ''cut holes in the banks of the said channel and placed obstructions in the stream thereof to deflect the waters from said creek over onto his own lands and the lands of the plaintiff Tonini''. While the court found the facts as set forth in this finding, the evidence shows that Ericcsen cut holes in said channel and diverted the waters of the creek over his lands and thence on to the Tonini property, only after the Russ Company had refused to permit the waters of said creek to flow in a channel across and over the Occidental ranch. It further appears that the court enjoined Ericcsen from the further diversion of waters on to the Tonini property and gave damages to Tonini for the injury thus sustained. It also directed the defendant to permit the waters of the creek to flow in a defined channel across the Occidental ranch. Or, in other words, it specifically enforced the agreement against the Russ Company. This disposition of the controversy was in accordance with well-established equitable principles. Where the failure of one party ''to perform is only partial and either entirely immaterial, or capable of being fully compensated'', in such case ''specific performance may be compelled upon full compensation being made for the default''. (Civ. Code, sec. 3392. See, also, 23 Cal. Jur. 454; *Furtinata* v. *Butterfield*, 14 Cal. App. 25 [110 Pac. 962]; *Sheplar* v. *Green*, 96 Cal. 218 [31 Pac. 42].)

Finally the appellant contends that in order to enforce the agreement it must be just and reasonable and the consideration must be adequate. There is no question but that the authorities cited by appellant fully support this statement of the law. The principle of law announced

therein, however, is so well established and generally admitted that no citation of authorities is necessary to support it. But we think sufficient facts were alleged and proven to entitle Ericcsen to a decree of specific performance. Appellant complains that under the decree it is compelled "to take Russ Creek as soon as it reaches the Occidental Ranch and confine it in a channel and empty it into tide water instead of spreading it over said ranch, thus saving the valuable sediment that it carries", and that the decree in that respect is not just and reasonable. The evidence shows that Russ Creek has been used by the Russ Company to overflow the Occidental ranch for years with the result that the surface of said ranch has been·raised above the level of the seventy-acre tract, and to longer permit the company to so use the waters of said creek would cause irreparable injury to Ericcsen. All that the decree provides is that the Russ Company shall use the waters of the creek so that they will not damage Ericcsen. There is nothing in the agreement or in the decree that prevents the Russ Company from using the waters of the creek so as to save the valuable sediment which it carries for the purpose of enriching the Occidental ranch so long as in so doing it does not cause said waters, in the language of the decree "to back up and overflow the lands and premises of said Leven C. Ericcsen". The evidence further shows when Ericcsen attempted to further raise the seventy-acre tract by.overflowing it with waters from the creek, that the waters escaped therefrom on to the lands of the Russ Company under lease to the plaintiff Tonini. There is an intimation that Tonini initiated this litigation upon the instigation of the Russ Company. The evidence is not clear that this is so. But they both appear by the same counsel and they have made common cause against defendant Ericcsen. If they both succeed then Ericcsen is helpless and his lands are subject to overflow and perpetual damage by the acts of the Russ Company, notwithstanding he has a contract with the Russ Company that it will convey, in a channel across the Occidental ranch to tide-water, the waters of Russ Creek after it leaves the seventy-acre tract. Under these conditions we cannot say that the action of the trial court in compelling the Russ Company "to take Russ Creek as soon as it reaches Occidental Ranch and confine it in a channel and empty it into

tidewater'' is either unjust or unreasonable. The claim of inadequacy of consideration is not supported by any argument and for that reason we deem it to be waived by appellant.

No further questions in the case merit discussion.

The judgment is affirmed.

Langdon, J., Preston, J., Thompson, J., Seawell, J., Shenk, J., and Waste, C. J., concurred.