[Civ. No. 15654. Second Dist., Div. Two. June 18, 1947.]

SAM LIFTON, Appellant, v. HARRY T. HARSHMAN et al., Respondents.

Newmark & Hamblin and George I. Devor for Appellant.

Stephen Monteleone and W. Torrence Stockman for Respondents.

WILSON, J.—The actors in the transaction that is the subject of this appeal whose names will frequently recur in our discussion are as follows: Appellant Sam Lifton, the purchaser, who for a number of years had been engaged in the business of buying and operating apartment houses; respondent Susan B. Harshman, one of the sellers, who during her many years' residence in Los Angeles has bought, owned and sold a number of houses; respondent Harry T. Harshman, her husband, the other seller, who is not engaged in any active business, being a retired builder; W. P. Anderson, a real estate broker; and Samuel H. Hanks, escrow officer in the

Wilshire-LaBrea Branch of the Security-First National Bank of Los Angeles. The Harshmans owned the apartment house and the furniture and furnishings in question.

This action results from the failure of respondents to comply with a written contract wherein they agreed to convey to appellant real property in the City of Los Angeles consisting of an apartment house and the land on which it is situated, together with its furniture and furnishings. Upon their refusal to convey appellant brought this action for specific performance or for damages. Judgment was rendered in favor of respondents from which this appeal is taken.

Anderson, knowing that Lifton desired to purchase an apartment house, ascertained that the Harshmans desired to sell their building with its furniture. After obtaining the terms on which the Harshmans would sell he discussed the matter with Lifton and all parties met in Hanks' office on January 8, 1945; escrow instructions were typed by Hanks but by reason of the failure of the parties to agree on all the terms of sale the instructions were not signed. On January 11, the parties again met in Hanks' office where new escrow instructions were typed and signed by Lifton and the Harshmans, which constitute the only contract between the parties. These instructions, omitting portions not material to a decision of this action, read as follows:

"ESCROW INSTRUCTIONS January 11th 1945
"BUYER

"To Security-First National Bank of Los Angeles

"I will hand you $28,000.00 and any additional funds and instruments, required from me to enable you to comply with these instructions, which you are to use provided on or before 30 days after date instruments have been filed for record entitling you to procure Standard Owner's or Joint Protection policy of title insurance, with title company liability for the amount of total consideration on real property in the County of Los Angeles State of California, viz: [Description of real and personal property] showing title vested in Sam Lifton or nominee Free of encumbrances except: 2nd. installment Taxes for fiscal year 1944, 1945. . . .

"Mortgage or Trust Deed securing an indebtedness of $ none, . . . Existin_ loan to be paid off by sellers, however buyer will pay bonus required to pay off said loan up to but not exceeding $480.00. . . .

"Trust Deed on your usual form securing Note for $67,000.00 . . . executed by the above named Grantee(s) and Said note to be further secured by Chattel Mortgage on the personal property described on Bill of Sale. . . .

"Seller agrees to furnish buyer with a termite and dry rot clearance on said property. . . .

"Seller agrees to deliver possession of said property free and clear of the existing lease, said lease to be cancelled by seller prior to close of escrow without any liability or obligation to buyer. . . .

"Immediate delivery to buyer without liability any landlord's copies of Office of Price Administration rental registration forms handed you by seller, said forms to be subject to the approval of the buyer and to show a monthly rent approved by O.P.A. of not less than $1840.00 in actual rentals. . . .

" 'Close of escrow' shall mean the day papers are filed for record. . . .

"If the conditions of this escrow have not been complied with at the time provided herein you are nevertheless to complete the same as soon as the conditions (except as to time) have been complied with, unless I shall have made written demand upon you for the return of money and/or instruments deposited by me. . . .

"Buyer's
Signature........Sam Lifton........

"SELLER

. "THE FOREGOING TERMS, CONDITIONS AND/OR INSTRUCTIONS ARE HEREBY CONCURRED IN, APPROVED AND ACCEPTED. I will hand you all instruments and money necessary for me to comply therewith, including a deed of the property described, executed by the undersigned which you are authorized to deliver provided you hold in this escrow for the account of the parties executing said deed the money and instruments deliverable to me under these instructions. Pay at close of escrow any encumbrances necessary to place title in the condition called for. . . .

"Seller's
Signature........Susan B. Harshman........

"Seller's
Signature........Harry T. Harshman"

The only material difference between the escrow instructions typed on January 8, which were not signed, and those typed on January 11, which became the contract of the parties, were these: In the first instructions Lifton agreed to pay $25,000 cash and to execute a promissory note secured by a trust deed on the real estate and a chattel mortgage on the personal property for $70,000; in the instructions signed he agreed to pay $28,000 and to execute a note for $67,000. In the first instruction the Harshmans agreed to pay Anderson his brokerage fee of $1,000; in the second Lifton agreed to pay the fee.

It will be observed that the Harshmans agreed (1) to deliver the property free of encumbrances except the second installment of taxes for the fiscal year 1944-45; (2) to pay off an existing loan; (3) to furnish buyer with termite and dry rot clearance; (4) to deliver possession "free and clear of the existing lease, said lease to be cancelled by seller prior to close of escrow without any liability or obligation to buyer"; (5) to deliver to buyer without liability landlord's copies of Office of Price Administration rental registration forms.

The contract required of Lifton (1) that he hand into the escrow $28,000 and any additional funds and instruments required from him to enable the escrow holder to comply with the instructions "which you are to use *provided on or before 30 days after date, instruments have been filed for record"* in order that a title policy could be obtained; (2) that he pay the bonus, not exceeding $480, that would be required by the holder of the outstanding trust deed for accepting premature payment thereon; (3) to pay the broker's commission.

Two days after the escrow instructions were signed Mr. and Mrs. Harshman left Los Angeles for Chicago and did not return until February 5. On February 7, Mrs. Harshman visited Hanks, the escrow officer, and left with him a tax bill showing the amount of taxes on the property and a statement from the Pacific Mutual Life Insurance Company showing the principal balance unpaid on the outstanding trust deed but not stating the exact amount necessary to satisfy the company's demand for payment. Until that time Hanks did not know who held the trust deed. He immediately wrote to the insurance company asking for the papers necessary to clear the encumbrance from the record.

While the Harshmans were absent Lifton called on Hanks

several times inquiring about the escrow, and he and Ander-son both endeavored to contact Mrs. Harshman, not knowing that she had departed from Los Angeles. In the latter part of January Anderson ascertained that the Harshmans were absent from the city and left a message for Mrs. Harshman to call him as soon as she returned. On January 22, Hanks, likewise not knowing that Mrs. Harshman had left the city, addressed a letter to her asking if he could be of any assistance in obtaining a cancellation of the lease. Although she returned to Los Angeles on February 5, and called on Hanks on the 7th, Mrs. Harshman did not call Anderson until the 12th, and they met in the escrow office on the following day.

During the absence of the Harshmans when Lifton was making his inquiries of Hanks as to whether the escrow was ready to close, he repeatedly inquired whether he should deposit his money. Hanks told him that nothing had been done by the Harshmans, that it would be useless for him, Lifton, to deposit any money, and that he would be notified by Hanks as soon as the transaction was ready to be closed and his money was needed. On each occasion Lifton stated that he was ready, able and willing to pay the amount required of him at any time and would do so whenever requested by Hanks.

The evidence is uncontradicted that it was the settled escrow practice in Los Angeles that a purchaser was not required or called upon to pay his money into escrow until the seller's papers had been deposited. This uniform escrow practice was testified to by Hanks, who had had 20 years' employment exclusively in escrow work, and by Lifton, who had long experience in buying and selling property. There was no evidence to the contrary. It is also in evidence that the Security-First National Bank had printed forms which were customarily used to notify the purchaser when the time had arrived for him to deposit his money. No such notification was ever sent to Lifton.

After Mrs. Harshman's return to Los Angeles Hanks repeatedly told her that it was necessary for her to place in escrow the documents required from her before Lifton would be called upon for his money. That Lifton was ready, able and willing to proceed with the transaction and to deposit his money is shown not only by his own evidence but by his repeated inquiries of Hanks above mentioned, by his willing-

ness to complete the transaction after the 30-day period had expired, and by evidence as to his financial ability given the vice president of a bank other than the escrow holder.

The 30-day period in the escrow instructions expired on February 10. At that time neither party had deposited the money or the documents required to close the transaction, but Lifton, both before and after that date, expressed his willingness to deposit his money at any time when Hanks had the necessary papers to convey title to him according to the contract.

Prior to February 10, no steps had been taken by the Harshmans to obtain a cancellation of the outstanding lease, and no statement had been obtained from the Pacific Mutual Life Insurance Company of the amount necessary to obtain a reconveyance of the trust deed held by that company. Termite and dry rot clearance had not been deposited.

Parol evidence was admitted which will be discussed hereafter to the effect that Lifton or Anderson, or both, agreed to attend to the details of obtaining the cancellation of the lease and the release of the Pacific Mutual trust deed. Hanks had not been advised as to who held the trust deed until February 7, when Mrs. Harshman gave him the information.

On February 13, Mrs. Harshman, Lifton and Anderson met with Hanks in his office. She there participated in the preparation of a letter to Taylor, the lessee of the apartment house whose lease was to be cancelled, with reference to obtaining an abrogation of the lease. At that time she deposited $3,000 in the escrow, which she testified was paid upon Lifton's promise to deposit his money on the same day. Her testimony as to Lifton's promise is contradicted by Hanks, Lifton and Anderson. She also testified that Hanks told her that the sum which she deposited, added to the amount which Lifton would be required to deposit, would be sufficient to clear the title to the property. This statement is also denied by Hanks, Lifton and Anderson. Their denial is supported by the evidence that Hanks did not know how much money would be needed, one reason being that the amount necessary to be paid to Taylor for a cancellation of his lease had not been ascertained, and no inquiry had been made of Taylor as to what he would demand. Her statement is further contradicted by the contents of the letter sent by Hanks to Taylor regarding the cancellation of the lease, in the preparation of which Mrs. Harshman participated.

Mrs. Harshman testified, over the objection of appellant, that at the meeting on February 13, Lifton said he was waiving the lease. The inadmissibility of this evidence will be discussed later. In the letter sent by Hanks to Taylor, which was prepared with Mrs. Harshman's active participation, Taylor was advised that the sellers (the Harshmans) were making arrangements to pay Taylor eight months' rent for a cancellation of the lease. Appellant inquires why this offer was authorized by Mrs. Harshman if, during the conference at which the letter was prepared, Lifton had waived the lease. We have looked in vain in respondents' argument for the answer.

Anderson and Lifton both visited Taylor on February 13, and delivered Hanks' letter to him. They obtained no definite answer from him. They called on Taylor again on February 16, when they were told by him that Mrs. Harshman had notified him that she would not complete the transaction. Mrs. Harshman advised Hanks, Lifton and Anderson that "the deal was off." Upon inquiry for a reason she stated that "it was her business." She sent letters to Lifton and Hanks terminating the transaction. On February 17, Lifton's attorney sent letters to the Harshmans and to the escrow holder advising that Lifton was ready, able and willing to perform his portion of the contract and demanding that the Harshmans complete the transaction. Lifton made a written tender and deposited in escrow all money and documents necessary for complete performance on his part. The Harshmans never procured a cancellation of the lease, a release of the trust deed or a termite clearance.

Respondents contend that they were justified in refusing to perform their part of the agreement for the reason that appellant had not deposited, within 30 days after the date of the escrow, the sum of $28,000 and his promissory note for $67,000 with a trust deed and chattel mortgage securing it. Appellant did not make an unconditional agreement to deposit his money and note within 30 days. He agreed to make the deposit *"provided on or before* 30 days after date instruments have been filed for record" entitling the escrow holder to procure a policy of title insurance showing the title vested as required by the escrow instructions. Since respondents had not within the 30-day period deposited a cancellation of the outstanding lease, an order from the insurance company for a reconveyance of its trust deed and a termite clearance, there was no obligation on the part of appellant to deposit any money in the escrow.

It is alleged in paragraph 7 of the amended complaint that the cash and the promissory note were to be deposited "as hereinafter set forth" ("hereinafter" refers to the terms of the escrow instructions); that appellant agreed to deposit the cash and the note with the trust deed and chattel mortgage securing the same "provided that on or before 30 days after the date of said escrow instructions, instruments should have been filed for record" entitling the escrow holder to procure a policy of title insurance. In paragraph 9 it is alleged that to enable the escrow holder to procure the policy of title insurance it was necessary that respondents should execute and furnish to the escrow holder a deed to the real property, a bill of sale to the personal property, and a duly executed cancellation of the existing lease. All these allegations are expressly admitted by respondents' answer to be true. Notwithstanding these admissions and the plain terms of the escrow instructions, the court found that the instructions required appellant to make his deposit "within thirty (30) days from January 11, 1945." This finding is contrary to the facts admitted by respondents' pleading.

The court made findings that on February 13, 1945, (1) appellant waived the requirement of the escrow instructions that the escrow holder should hold instruments or documents releasing the real and personal property from the lien of the deed of trust and chattel mortgage held by Pacific Mutual Life Insurance Company; (2) appellant waived instruments and documents releasing the property from the outstanding lease; and (3) appellant agreed that he or his agent would attend to and secure the deposit in escrow of the necessary documents to effect the release of the deed of trust, chattel mortgage and lease. The court made a further finding, contrary to an expressly admitted allegation in the amended complaint, that it was not true that respondents should furnish the escrow holder with a cancellation of the lease or with documents effecting the release of the deed of trust and chattel mortgage because those provisions of the escrow instructions were, on February 13, 1945, expressly waived by appellant and that respondents were thereby expressly excused and exonerated by appellant from so doing. The foregoing findings are not only contrary to the facts alleged by appellant and expressly admitted by respondents' answer but there is not a scintilla of evidence in the record to support them.

When allegations in a complaint are admitted by the answer (a) no evidence need be offered in their support;

(b) evidence is not admissible to prove their untruth; (c) no finding thereon is necessary; (d) a finding contrary thereto is error.

 Evidence of conversations and negotiations leading up to the execution of a contract in writing is inadmissible since such conversations and negotiations are deemed to have been merged in the contract. (Civ. Code, § 1625.) ''A contract in writing may be altered by a contract in writing, or by an executed oral agreement, and not otherwise.'' (Civ. Code, § 1698; *Dollar* v. *International Banking Corp.*, 13 Cal. App. 331, 341 [109 P.2d 499]; *Rottman* v. *Hevener*, 54 Cal. App. 474, 478 [202 P. 329].)

 The parol evidence rule is not a rule of evidence, but is one of substantive law. (*Estate of Gaines*, 15 Cal.2d 255, 264 [100 P.2d 1055]; *Nourse* v. *Kovacevich*, 42 Cal.App.2d 769, 771 [109 P.2d 999]; *Fogler* v. *Purkiser*, 127 Cal.App. 554, 560 [16 P.2d 305].) Such evidence, though admitted without objection, must be ignored as of no legal import and its incompetency to vary a written contract is a matter of law. (*Rottman* v. *Hevener, supra*, at p. 479; *Middlecamp* v. *Zumwalt* 100 Cal.App. 715, 723 [280 P. 1003]; *Hanrahan-Wilcox Corp.* v. *Jenison Machinery Co.*, 23 Cal. App.2d 642, 645 [73 P.2d 1241]; *Dollar* v. *International Banking Corp., supra*, at p. 343.)

 Since there was neither writing nor executed oral agreement to vary the terms of the contract contained in the escrow instructions and since the parol evidence erroneously admitted by the court must be entirely ignored, any finding that the agreement was amended or that any portion of it was waived by appellant is error.

Under the evidence and the rules above stated no finding is possible other than that respondents agreed to deliver into the escrow a cancellation of the lease, a release of the deed of trust and a termite clearance, and that they failed to do so.

 Respondents in their portion of the escrow instructions ''concurred in, approved and accepted'' the terms of the escrow as set forth in the buyer's (appellant's) instructions and agreed to deposit in escrow ''all instruments and money necessary'' for them to comply with the agreement. As we have previously stated, they never deposited a cancellation of the lease, a release of the deed of trust and chattel mortgage or a termite clearance. Before respondents could require appellant to perform his part of the agreement they must have fulfilled all conditions precedent imposed upon

them and must have been able to fulfill and must have offered to fulfill all conditions concurrent imposed upon them. (Civ. Code, § 1439; *Boone* v. *Templeman,* 158 Cal. 290, 298 [110 P. 947, 139 Am.St.Rep. 126].) Where a seller is in default for failure to deliver his deed he may not rightly contend that the buyer is in default. (*Moresco* v. *Foppiano,* 7 Cal.2d 242, 246 [60 P.2d 430].) A purchaser is not bound to make payment until the seller is prepared to give a good deed. (*Cates* v. *McNeil,* 169 Cal. 697, 706 [147 P. 944]; *Luchetti* v. *Frost,* 6 Cal.Unrep. 763, 765 [65 P. 969]; *Ohanian* v. *Kazarian,* 123 Cal.App. 196, 200 [11 P.2d 42].) Since respondents had not deposited in escrow the necessary papers that would enable a title company to issue a policy of title insurance showing title to be vested in appellant free of the liens of the lease and deed of trust, it was not incumbent upon appellant to tender the purchase price. (*Tatum* v. *Levi,* 117 Cal.App. 83, 89 [3 P.2d 963].)

Time was not declared to be of the essence of the contract, but even when time is of the essence it may be waived by the conduct of the parties. On February 13, three days after the expiration of the 30-day period, Mrs. Harshman deposited money in the escrow to be used toward paying the encumbrances and she participated in the preparation of the letter to Taylor with reference to the terms on which he would surrender and cancel his lease. When the requirement as to time has been waived by one party he must, in order to put the other in default, not only give notice that strict compliance will thereafter be required but must allow the other party a reasonable time within which to perform. (*Boyd* v. *A. E. J. Chivers Co.,* 134 Cal.App. 566, 569 [25 P.2d 878]; *Sherwood* v. *Greater Berkeley Land Co.,* 99 Cal.App. 663, 665 [279 P. 167]; *Stevinson* v. *Joy,* 164 Cal. 279, 285 [128 P. 751].) Respondents did not give such notice and did not allow appellant a reasonable time to perform, even if he had been in default. They gave notice of immediate cancellation of the contract, although appellant was not in default but was ready, able and willing to deposit his money as soon as he was called upon to do so, and although Hanks told Mrs. Harshman that it was necessary for her to deposit the cancellation of the lease and the release of the deed of trust before the money could be demanded from appellant.

Even if the buyer is in default specific performance may nevertheless be enforced where the failure is only partial

and is either entirely immaterial or is capable of being fully compensated. (Civ. Code, § 3392; *Tonini* v. *Ericcsen,* 218 Cal. 43, 52 [21 P.2d 566]; *Brown* v. *Roberts,* 121 Cal.App. 654, 657 [9 P.2d 517]; *Furtinata* v. *Butterfield,* 14 Cal.App. 25, 30 [110 P. 962].)

The escrow instructions did not limit the time of performance to 30 days after their date. The final paragraph of the seller's instructions, to which respondents agreed, provided that if the conditions had not been complied with at the time provided therein the escrow holder might nevertheless complete the same as soon as the conditions (except as to time) had been fulfilled.

The amended complaint alleged and the answer admitted that the consideration named in the contract as the total purchase price of the property was the fair and reasonable value of the property, that there was no change in the market value thereof between the date of the escrow instructions and the date of the written tender of the purchase price on February 24, 1945, and that respondents did not sustain any loss or injury on account of appellant's delay in tendering the balance of the consideration. These admissions preclude respondents from predicating their refusal to complete the transaction and from defending against specific performance of the agreement on a contention that they have suffered damage by reason of the delay.

The finding that respondents performed each and every act incumbent upon them within the time required by the contract is contrary to the evidence to which we have referred.

The final finding made by the court is that "the contract hereinabove mentioned was entered into under circumstances instigated and created by the plaintiff which rendered the said contract unjust and unreasonable to the defendants." Whether this be construed as a finding of fact or, as suggested by appellant, a misplaced conclusion of law, it is without foundation. No facts were alleged or proved and none were found by the court that furnish a basis for the finding.

Respondents contend that the finding last mentioned was justified because appellant failed to plead that the contract was, as to respondents, just and reasonable. An allegation in that form is merely a conclusion of law. (*Joyce* v. *Tomasini,* 168 Cal. 234, 237 [142 P. 67]; *Andersen* v. *Charles,* 52 Cal.App. 290, 292 [198 P. 641]; *Bonney* v. *Petty,* 125 Cal. App. 527, 529 [13 P.2d 969].) It is not required that the

allegation should be in the words of the code. The proper method of pleading is to allege the facts from which the court may conclude that the contract is supported by an adequate consideration and is fair and reasonable to the defendant. (*Armstrong* v. *Sacramento V. R. Co.*, 52 Cal.App. 110, 114 [198 P. 217]; *Magee* v. *Magee*, 174 Cal. 276, 281 [162 P. 1023].) Appellant did not plead conclusions of law but pleaded the facts by setting out the contract *in haec verba* in his amended complaint and by alleging the fact (which was admitted by respondents' answer) that the consideration named in the contract was, at the time of the execution of the contract, the fair and reasonable value of the property; that there was no change in the market value of the property between the date of the contract and February 24, 1945; that respondents did not sustain any loss or injury by reason of appellant's delay in tendering the balance of the consideration.

The matters alleged in the separate and affirmative defense set forth in respondents' answer have been fully covered in our previous discussion and need not be referred to in detail.

The elimination from our consideration of all parol evidence concerning "side agreements" alleged to have been made when the escrow instructions were signed, alleged oral modifications of the contract and alleged waivers of any of its provisions leaves nothing but the written contract before us.

Respondents made no allegation in their answer, nor do they assert in their brief, that the contract was unfair, unjust or inequitable. There is no claim of fraud, misrepresentation or unfairness, or of any other ground upon which respondents could predicate an action to set aside the contract, and there is no evidence whatsoever indicating in the slightest degree any circumstance which renders the contract unjust and unreasonable. The absence of any basis for such a contention is emphasized by the admission of respondents that the consideration named in the contract was the fair and reasonable value of the property.

Respondents advance the tenuous theory that they did not understand the purport of the escrow instructions because they were actually typed by Anderson, the broker, and not by Hanks, the escrow officer, and that a full explanation of the instructions was not given to them. However, on January 8, when respondents first met in the escrow office with Lifton, Anderson and Hanks the latter, after a discussion of the

terms of the sale, prepared and typed a form of instructions. By reason of some disagreement those instructions were not signed. They are in evidence as an exhibit. A comparison of the instructions prepared by Hanks on January 8 with those typed by Anderson on the 11th and signed by the parties shows that there is no material difference between the two documents. The variations are detailed in an earlier portion of this opinion. The form typed by Hanks contains notations written in pencil indicating the changes agreed upon by the parties. The signed instructions are an exact copy of those previously prepared except for the changes indicated by the penciled interlineations to which all parties agreed. There is no contention that the signed contract was not read or was not fully understood by respondents.

Appellant made allegations in his amended complaint in an amendment thereto, and in a supplemental complaint, that by reason of the failure of respondents to convey the property he had been deprived of rents, issues and profits thereof and further, that should respondents be unable to carry out the terms of the contract he would suffer damage. In view of the fact that we have determined that the only admissible evidence relating to the agreement between the parties consists of the escrow instructions signed by them, appellant is entitled to a conveyance of the property in accord with the terms of the agreement, and if respondents are unable to furnish a title to the property and a policy of title insurance in conformity with the escrow instructions appellant is entitled to damages in an amount to be ascertained by the court. (*Coleman* v. *Dawson*, 110 Cal.App. 201, 213 [294 P. 13]; *Heinlen* v. *Martin*, 53 Cal. 321, 340; *Smith* v. *Schrader*, 80 Cal.App. 478, 489 [251 P. 967].)

The judgment is reversed with instructions (1) to make and file findings of fact that all allegations in paragraphs 1 to 21, both inclusive, of plaintiff's amended complaint as amended by paragraphs 1 and 2 of the amendment to amended complaint are true, and that all allegations contained in defendants' answer inconsistent with the allegations in plaintiff's pleadings are untrue; (2) to take evidence upon the sole question of the loss and damage suffered by plaintiff as alleged in paragraph 22 of the amended complaint, paragraphs 1 to 5, both inclusive, of the supplemental complaint, and paragraph 3 of the amendment to amended complaint which adds paragraph 23 to the amended complaint; (3) to include in its findings of fact a finding of the amount of damages suf-

fered by plaintiff as shown by the evidence which the court is hereby directed to receive; (4) to make and file conclusions of law consonant with the findings; (5) to render and enter a judgment in favor of plaintiff in accord with the findings hereby directed to be made and with this opinion.

Moore, P. J., and McComb, J., concurred.

A petition for a rehearing was denied July 8, 1947, and respondents' petition for a hearing by the Supreme Court was denied August 14, 1947. Carter, J., and Schauer, J., voted for a hearing.