[Civ. No. 397. Fourth Appellate District.—April 29, 1932.]

PAKRAD D. OHANIAN, Respondent, v. HAROOTEUN KAZARIAN et al., Defendants; ARAM MERZOIAN, Appellant.

Frank Kauke for Appellant.

Ben H. Johnson for Respondent.

BARNARD, P. J.—On August 21, 1917, one Ludwig Wass and his wife sold certain real property in Fresno County to Malcon Garabedian under a contract for $13,950, payable $3,250 in cash, $500 on November 1, 1918, and $500 on November 1st, of each succeeding year until the balance was reduced to $4,000, and thereafter $1,000 or more on November 1st of each year until the entire purchase price was paid. The interest of Wass and his wife duly passed to Belle Wass, Lida Wass and Mrs. C. C. Anderson, and the interest of Garabedian was acquired by the appellant herein. Subsequently the appellant sold the property on another contract to Harooteun Kazarian, one of the defendants herein, who was in possession of the property at all times material hereto. All payments coming due under the first mentioned contract were paid by appellant up to and including November 1, 1928. During 1929 the proceeds of certain insurance on some buildings on the property which had burned were received and applied upon the contract. From this source, on July 6, 1929, the sum of $4,263.15 was paid and on October 16, 1929, a further sum of $450 was paid,

leaving an unpaid balance on the purchase price of $1287.60. On November 6, 1930, the respondent herein received from Belle Wass, Lida Wass and Mrs. C. C. Anderson a deed to the property subject to the contract first above mentioned, having paid to them the remaining sum of $1287.60 with interest to date. On November 14, 1930, the respondent exhibited his deed to the appellant and said: "Mr. Merzoian, I got the deed and I want you to make the payments from now on to me, and it is due now." The respondent testified that the appellant replied as follows: "I am not going to pay you, not a penny, until I get it from Harooteun Kazarian", although the making of this statement is denied by the appellant.

On November 17, 1930, this action was filed in the form of an ordinary quiet title suit. An answer and cross-complaint was filed setting up, among other things, the contract in question with the various assignments thereof; that the respondent acquired title to the property subject to the terms of this contract; that the appellant had kept and performed the terms of said contract; that all of the purchase price for the real property had been paid save and except the sum of $1291.60 or thereabouts; that the appellant had requested a deed and had offered to pay the balance of the purchase price in full; that the appellant was ready, able and willing to make full payment of the balance due; that no deed had been executed or tendered to him; that the appellant offered to pay to the respondent or to whomsoever was entitled to receive the same, the remaining unpaid balance of $1291.60 or such other or different or further sum as the court shall find remains unpaid on the purchase price, together with all accrued interest; and that the appellant is entitled to a deed to the premises. The prayer was that the respondent take nothing by reason of the action and that the appellant have judgment requiring the respondent to convey the property to the appellant in accordance with the terms of the contract, and that the appellant's title be quieted against the respondent and all persons claiming under him, and for such other and further relief as to the court shall seem equitable. After a trial, the court found that no deed had been tendered to the appellant and also found that on or about the sixth day of July, 1929, Belle Wass, Lida

Wass and Mrs. C. C. Anderson offered to execute and deliver to the appellant a deed to said real property "upon the sole condition that he pay the balance due on account of the purchase of said property, or execute to said Vendors his promissory note in the amount of said purchase price and secure said promissory note by a mortgage on said real property which should be a first lien thereon, all as provided by said agreement to purchase dated August 21, 1917, and that said Defendant, Aram Merzoian, refused to comply with the conditions entitling him to demand and receive a deed to said real property and at no time thereafter has the said Defendant, Aram Merzoian, offered to comply with said terms and conditions." Judgment was entered in favor of the respondent, from which this appeal is taken.

The only question here presented is whether under such circumstances as here exist, in an equitable action, the respondent is entitled to claim a forfeiture without himself tendering a deed and demanding performance, and whether the tender by the appellant of the remaining balance due must, under the circumstances, be held to have been properly refused. In our opinion, there are several reasons why the respondent may not be allowed to claim such a forfeiture, only a part of which will be here discussed.

The contract in question contains the following clause:

"On the payment by second party of all of said purchase price, except $4,000.00 or less, together with all interest that has accrued to such date, and upon the performance by him to such time of this contract in all other respects, first parties will execute and deliver to second party their grant, bargain and sale deed, conveying to second party a good title to said premises subject, however, to rights of way for roads and ditches and public utilities, and subject to water rights, and at the same time second party shall execute and deliver to first party his promissory note in the sum of $4,000.00 or less, according to the amount of principal then unpaid, payable in instalments of $1,000.00 annually, the first instalment to be payable on November 1st of the year next ensuing the execution of said deed and so on in each year until the whole has been paid. Said note shall bear interest at the rate of seven per cent

per annum payable on November 1st of each year. At the same time second party shall execute his real property mortgage covering the above described land securing said note, which mortgage shall be a first lien on said land.''

The balance due under the contract was reduced below $4,000 by the payment made on July 6, 1929. Thereafter, the installments coming due became $1,000 instead of $500 each. But the vendor agreed to then deliver a deed and take back a mortgage payable according to the terms stated. If the language of the contract above quoted be interpreted as calling for a payment of $1,000 on November 1, 1929, then the entire balance became due on November 1, 1930, and all of the installments of the purchase price were past due before any action was taken by the respondent. Under such circumstances the respondent could not recover in this action until after he had tendered a deed. (*Boone* v. *Templeman,* 158 Cal. 290 [139 Am. St. Rep. 126, 110 Pac. 947] ; *Sherwood* v. *Greater Berkeley Land Co.,* 99 Cal. App. 663 [279 Pac. 167].) If, however, this language of the contract is interpreted as making the first installment of $1,000 due after the execution of the deed called for, since that deed has never been given, the appellant has never been in default in the making of any such payment.

It further appears that the respondent was himself in default and in no position to maintain this action. As noted above, the court found that the respondent's predecessors on or about July 6, 1929, offered to execute and deliver to the appellant a deed to this property upon the sole condition that he would pay the balance due or execute a promissory note for said balance, secured by a first mortgage upon the real property. This finding is not supported by the evidence. The uncontradicted evidence is that after the payment was made on July 6, 1929, which matter was handled by an attorney for the vendors, the appellant demanded a deed. This attorney testified as follows : ''Well, as I remember the conversation he said, 'Now, that the principal is reduced to less than $4,000.00 I suppose I am entitled to a deed,' and I said 'Yes, you are entitled to a deed, when you can give us a mortgage on the property which will be a first lien on the property.' I wanted Mrs. Wass to have that mortgage without any equity of any kind

on it, 'and if you will go'—I told him at that time, if he would go to the abstract company and get me a certificate showing that the mortgage which he could give to Mrs. Wass would be a first class mortgage, that he could have the deed any time. . . . A. We discussed it, and I told him he better check up and find out whether he had a suit against him, because we were not going to take a mortgage on the property, with a judgment ahead of it. Q. And what did he say? A. He said he was going to look into it and find out, and the thing just dragged along and nothing was done at all. The Court: Q. And then this other party came along, this man here, and paid off the balance? A. Paid off the balance and I gave him a deed subject to the contract, this agreement, I think that is in the deed, and got out of the picture.'' While the contract provided that the mortgage to be given should be a first lien upon the property, nothing in the contract required the appellant to furnish a certificate of title and it thus appears that while, as found by the court, the appellant demanded a deed, the vendors did not offer the same upon the sole condition of the contract being complied with by the giving of a first mortgage upon the property, but the deed was offered by the vendors upon a condition which, under the contract, they had no right to make.

■ If it be considered that the appellants were, after November 1, 1929, in default in the making of any payment then due, we think it thus satisfactorily appears that any such default was waived by the predecessors of the respondent by their own default in failing to give a deed, in allowing the matter to drag along for more than a year as testified to by their attorney, in accepting $450 instead of $1,000 if $1,000 was due on November 1, 1929, and in letting the whole matter rest until the final payment became due on November 1, 1930, in accordance with that construction of the contract which is most favorable to the respondent. Under such circumstances, under the authorities above referred to, it was incumbent upon the respondent to tender a deed to the appellant before a forfeiture could be claimed.

■ The respondent admits that such cases as *Boone* v. *Templeman, supra,* would be controlling in this case had the appellant set up an equitable defense, but maintains that the appellant is relying entirely upon his strict legal rights

and that, therefore, these authorities do not apply. Respondent himself chose his forum and while seeking to hold the respondent to strict rules of law, he asks the aid of a court of equity in taking his pound of flesh, regardless of whatever must be taken with it, to which he is not entitled. Not only has the appellant in his answer and cross-complaint set up in part an equitable defense and asked for equitable relief, but by bringing this suit in equity the respondent has subjected himself to its rules, one of the most familiar of which is that "He who seeks equity must do equity." As was said in *O'Brien* v. *O'Brien*, 197 Cal. 577 [241 Pac. 861, 864], this "means that the court will not confer its equitable relief upon one seeking its interposition and aid 'unless he has acknowledged or conceded, or will admit and provide for, all the equitable rights, claims and demands justly belonging to the adverse party, and growing out of or necessarily involved in the subject matter of the controversy' (Pomeroy's Equity Jurisprudence, sec. 386; *Cox* v. *Hughes*, 10 Cal. App. 553 [102 Pac. 956]; 10 Cal. Jur. 508). This principle of equity is applicable to an action to quiet title (*Holland* v. *Hotchkiss*, 162 Cal. 366 [L. R. A. 1915C, 492, 123 Pac. 258]; 22 Cal. Jur. 134, and cases cited)." In determining the conditions to be imposed in doing equity a court should, in order to do justice, take into consideration all of the circumstances. In the case before us, the final payment under the contract would not have come due until about seven years later, if the vendee had elected to rebuild the burned buildings, as he had a right to do under the terms of the contract, instead of applying the insurance money on the purchase price. As an actual fact, the purchase price was almost paid out years ahead of the time when it was contemplated that it should be paid. All payments had been made as they became due up to November 1, 1929, the then vendors were perfectly satisfied, they acquiesced in the ensuing delay, and they had in fact caused this delay by demanding as a condition for the giving of a deed, something to which they were not entitled. While the matter thus "dragged along", without objection from the vendors and in part, at least, through their fault, the respondent purchased the interest of the vendors in the contract for $1287.60 and some interest. It is hardly to be

supposed that he paid out this amount for the purpose of immediately getting it back from the appellant. His actions show that his only purpose must have been to either acquire the property for less than it was worth, or to assist his father-in-law Harooteun Kazarian in getting the property without paying the amount due to the appellant upon the second contract. The demand he then made upon the appellant was equivocal and misleading, and he himself testified that he did not then or at any other time, name any particular amount as due from the appellant. Even in his answer to the cross-complaint filed by appellant, the respondent denies that the balance due is the amount named by the appellant, but alleges that the balance due "was in excess of said sum", without saying what amount was claimed. If the appellant was in default, the entire balance of the purchase price was due. Under these circumstances it would be inequitable to permit the respondent to recover this property, sold for $13,950 upon a claimed default in the payment of the last few hundred dollars, in an equitable action brought by him when the vendee is in court offering to pay and seeking to be allowed to pay the balance due, with interest.

The judgment is reversed and the case remanded, with directions to the trial court to enter a judgment in conformity with the views herein expressed, giving a reasonable opportunity to the appellant to pay the balance due and receive a deed to the property before providing for any judgment for the respondent.

Marks, J., and Jennings, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on May 26, 1932.