[L. A. No. 11047. In Bank.—November 29, 1932.]

ALICE G. McCARTNEY et al., Appellants, v. A. P. CAMPBELL et al., Respondents.

716

C. E. McDowell, *in pro. per.*, Harry L. Cohn and William J. Clark for Appellants.

Tanner, Odell & Taft, H. O. Harrawood, Louis F. Labarere and John A. Cronin for Respondents.

THE COURT.—This is an appeal by plaintiff from a judgment of the Superior Court of Los Angeles County in favor of defendants in an action to quiet title. Since the appeal was taken certain parties have dropped out of the litigation, as will hereinafter appear.

On April 17, 1918, plaintiff was the owner of certain land in Los Angeles County, valued at about $10,000. On said date she entered into a contract with A. P. Campbell, by the terms of which she gave him the exclusive selling agency for the land, under certain conditions. With her consent the contract was assigned the next day to Campbell-Bentley Company. The term was specified to be six months, with a right to renew the same for an additional period of one year, upon making certain payments to plaintiff. During the six months' period Campbell-Bentley Company solicited prospects, and entered into a number of contracts

of sale with purchasers for various lots in the tract. The only ones which are involved in this appeal are the contracts with defendants Timm, Jilson and Bachman. These defendants made a number of payments on their contracts, although they were frequently in default on the installments. Prior to the commencement of this action, on September 22, 1923, defendant Timm had made all payments, and defendant Jilson had tendered the balance due and thereafter deposited the same in court.

The agency contract was extended after six months for the additional one-year period, which expired without the tract being disposed of. Thereafter, on February 1, 1929, plaintiff entered into an agreement with A. P. Campbell and E. E. McCalla, by the terms of which the latter parties were given an exclusive option for two years to purchase the land for $11,263.51. Certain payments were made by them. The period expired without the payment of the entire sum, and thereafter, on August 10, 1921, plaintiff gave notice of rescission of the option for failure to perform its terms. The rights of Campbell-Bentley Company, and Campbell and McCalla, have all succeeded to McCalla. Plaintiff subsequently brought this action, naming as defendants Campbell, Campbell-Bentley Company, McCalla and various purchasers.

The lower court held that by virtue of the option contract, McCalla owed a balance of $7,796.60 to plaintiff, and that upon payment of such sum was entitled to receive a deed to the same, with the exception of certain parcels, particularly the lots sold to defendant purchasers. With respect to these defendants, the court held that upon payment of their balances, they were entitled to deeds, provided that McCalla first paid his balance of $7,796.60.

Plaintiff appealed, and pending the determination thereof certain of the defendants stipulated with plaintiff that the judgment should be reversed, and an order was made by this court on January 10, 1930, reversing the same as to such parties. There remain as defendants only Timm, Bachman and Jilson. It also appears that plaintiff has compromised certain claims, and that her interest in the litigation has succeeded to C. E. McDowell.

It is contended by plaintiff and appellant that the agency contract of April 17, 1918, did not authorize actual sales to

be made, and that any rights which the purchasers might have acquired if such authority did exist were nevertheless terminated by their default in prompt payments under a contract in which time was of the essence.

The first question before us is, therefore, whether the agency contract of April 17, 1918, authorized Campbell-Bentley Company to enter into binding contracts of sale on behalf of plaintiff. The trial court found that it did, and we think the evidence supports the finding. The instrument is entitled "Exclusive Selling Agency Contract", and recites that for valuable consideration, plaintiff grants to Campbell or his assigns "the exclusive selling agency" of the property, with "the right to fix the prices" and to "sell this property as he may deem best, subdivide it, if necessary at his own expense". It is provided that Campbell or his assigns shall pay the interest on the deed of trust on the land, taxes, and "shall bear all of the expenses and responsibility of his selling operations". It further provides that he is given the right to "sell the same for not less than 10% of the purchase price down and $10.00 per month per lot providing that the selling price shall be greater than the proportionate amount of said lot to the $5,000 owed to the Bank and the $5,000 additional, which is to be my net equity from the said sales, it being my intention to allow the said A. P. Campbell, or his assigns, all the money received over and above $10,000 and interest at the rate of 7% per annum, as his commission for making said sales". She further agrees "to allow a discount of 5% when a lot, or lots, has been sold for all cash".

In the face of this language it cannot reasonably be said that Campbell's authority was merely to find a purchaser. He is in express terms given authority to sell and to control all the details of the sales. He is, moreover, obligated to bear all expenses. The plain purport of the instrument is that plaintiff desired to receive the $10,000 as her "net equity" and gave Campbell full authority to market the tract and to get that equity for her. No extensive review of the cases is necessary to establish this point, but as the court said in *Bacon* v. *Davis*, 9 Cal. App. 83, 96 [98 Pac. 71, 76]: "It does seem . . . that if the plaintiff had intended to authorize the defendant simply to find a purchaser for the property and not to bind himself to convey to

such purchaser, he would have used simpler terms than those found in the instrument before us. Knowing, as it is presumed he did, the meaning which usage has given to the phrase 'to sell' when contained in a broker's contract, it is reasonable to suppose that he would have gone no further except to describe the property, provide probably in a general way for the terms of the sale and to specify the broker's commission." (See, also, *McNeil* v. *Shirley*, 33 Cal. 202; *Rutenberg* v. *Main*, 47 Cal. 213.)

█ It is contended, however, that other provisions of the instrument negative this broad grant of authority. The first is that by which plaintiff agrees on demand to deed the property to a trustee, and enter into a trust agreement authorizing Campbell to sell the lots at any price he may elect, above $10,000, plus interest, and further agrees that the trustee may execute contracts and deeds. The theory is advanced that this method is the only one provided in the contract by which title may be passed by anyone other than the plaintiff. We think, however, that the trust method of having deeds executed does not exclude the power of the agent to enter into binding contracts of sale, which power is clearly indicated in the rest of the instrument. The second provision upon which plaintiff lays stress is that providing that Campbell "shall in no way contract any obligation of any nature whatsoever against said property". Bearing in mind the other provisions of the agreement, it would seem that this one refers to the creation of liens or other encumbrances, and does not operate to defeat the main purpose of the contract, which is to negotiate sales of lots. The necessity of such a provision is obvious, in view of the duty of the agent to incur expenses in preparing the tract for sale, as, e. g., in subdividing it.

█ An additional factor tending to show that Campbell-Bentley Company had authority to sell is the evidence of receipt of payments on these contracts by plaintiff. These payments, made to the agents, ultimately found their way to plaintiff. The evidence shows also that she was informed of the sales, that the contracts were recorded and that she made no objection thereto. Whether this amounts to a ratification or estoppel it is unnecessary to decide; but the evidence is relevant and material as an indication of the proper meaning to be placed upon the agreement. █ It

is well settled that the acts of the parties subsequent to the execution of a contract may be looked to in ascertaining its meaning, since they are in effect a *practical construction* thereof. (*Tennant* v. *Wilde*, 98 Cal. App. 437 [277 Pac. 137]; *Retsloff* v. *Smith*, 79 Cal. App. 443 [249 Pac. 886]; *Luckie* v. *Diamond Coal Co.*, 41 Cal. App. 468 [183 Pac. 178]; *Carlson* v. *Industrial Acc. Com.*, 213 Cal. 287 [2 Pac. (2d) 151].)

◾ Appellant makes the further contention that the contracts made by Campbell-Bentley Company with the purchasers did not purport to bind her; i. e., they were not expressed in such a manner as to disclose clearly that they were executed by an agent on behalf of a principal. The contracts recite that the agreement is between "Campbell-Bentley Company, duly authorized agents of Alice G. Mc-Cartney, owner", and the purchaser. They are signed by "Campbell-Bentley Company, Agents, By A. P. Campbell". The testimony was also clear to the effect that the purchasers understood that they were dealing with plaintiff. There is no merit in this point.

◾ The next question is whether plaintiff had the right to commence this action to quiet title, and thereby to forfeit the interests of the defendants, without a prior demand of performance or tender of a deed. On this point the evidence is clear that, notwithstanding the provision in the purchasers' contracts that time was of the essence, they were frequently in default, and delayed payments were continually accepted until just prior to the suit. Under these circumstances the rule is settled that the provision making time of the essence is waived, and a demand for strict performance or a tender of a deed is necessary before a forfeiture can be enforced. (*Boone* v. *Templeman*, 158 Cal. 290 [139 Am. St. Rep. 126, 110 Pac. 947].) No such demand or tender was made in the instant case, and it follows that the interests of defendant purchasers were not forfeited. The equitable relief granted by the lower court, a right to receive deeds upon full payment of the purchase price, was therefore proper.

The judgment is affirmed, except as to those parties who previously consented to a reversal thereof.

Rehearing denied.