[Civ. No. 3237.   Fourth Dist.   Nov. 8, 1943.]

COMMUNITY INDUSTRIAL LAND CO., INC. (a Corporation), Respondent, v. N. W. WALKER, Appellant.

Henry C. Rohr for Appellant.

Friis & Schutz for Respondent.

BARNARD, P. J.—This is a quiet title action involving two parcels of land. By a written agreement dated November 25, 1940, the defendant agreed to purchase from the plaintiff about two acres, referred to as Parcel 1, for $1,000, payable $50 down, $50 on February 1, 1941, and varying monthly payments thereafter, the final payment being due February 1, 1942. No interest was provided for in the contract. Under the agreement the defendant also leased from the plaintiff an adjoining tract of land, known as Parcel 2, for one dollar a year plus taxes, with an option to purchase the same at any time prior to September 6, 1942, for $500 an acre payable in cash. It is conceded that before this agreement was entered into the parties had talked over the fact that in years past the land had been flooded at times and that the secretary of the plaintiff corporation had informed the defendant that a new dam had been installed in the Santa Ana River. While the plaintiff disputes this the defendant testified that he was also told that this dam would prevent any future flooding of the land.

The defendant moved a building upon Parcel 1, as provided for in the agreement, and began operating a factory therein. There is evidence that this and other improvements were of the value of several thousand dollars. He paid the down payment of $50, and the $50 payment due February 1, 1941, was paid and accepted on February 27, 1941. At that time he also paid one dollar as the rental for Parcel 2 for the first year. Shortly thereafter the land became flooded, there being a foot or two of water on the floor of the building.

The defendant notified the officers of the plaintiff corporation about the flooded condition, asked them what they were going to do about it, and later sought a modification of the agreement. He made no further payments and did not pay the taxes as they became due. It is admitted that the officers of the plaintiff expressed a willingness to adjust the matter and entered into negotiations with the defendant which extended over a considerable period. The defendant was away for some months and nothing very definite seems to have been done until the spring of 1942, more than a year after the negotiations started.

In April, 1942, the defendant appeared at a meeting of the directors of the plaintiff corporation and the parties arrived at a tentative agreement to the effect that the defendant would be permitted to purchase a somewhat different parcel of approximately one acre, which embraced the land on which the building stood, for $750, payable in twenty-four equal instalments. The secretary of the corporation was instructed to have its attorney draw up such an agreement. This was done about two weeks later but the agreement was never delivered to or shown to the defendant. There is a conflict in the evidence as to whether failure of the defendant to sign the new agreement was due to his own fault or to neglect on the part of the plaintiff. The secretary of the plaintiff corporation testified that on several occasions he asked the defendant to sign it or told him where it could be found, that the last of these conversations was late in July or early in August, 1942, and that the defendant then said he would sign the contract soon.

Nothing further occurred until August 13, 1942, when the plaintiff brought an action against the defendant in the Santa Ana justice court seeking to recover $900 as the balance of the purchase price under the original agreement. Very soon thereafter that action was dismissed. A witness for the plaintiff testified that this action was dismissed because an attorney

for the defendant had informed them that a defense on the ground of fraud would be interposed in that action and because they preferred to try that issue in the superior court.

On September 2, 1942, the defendant notified the plaintiff, in writing, that "I hereby exercise my option" to purchase Parcel 2. On September 14, 1942, the plaintiff brought this action to quiet its title to both parcels of land mentioned in the original agreement. It is conceded that no notice of intended forfeiture was ever served upon the defendant and that no tender of deed was ever made. The defendant filed an answer which included a separate defense on the ground of misrepresentation in connection with flood conditions on the land. Two days before the trial the defendant asked the plaintiff's attorney if they would accept $900 for Parcel 1 and received a negative reply. On the morning of the trial, the defendant in writing notified the plaintiff that he stood ready to pay the balance of the purchase price for Parcel 1 under the original agreement, stating that "according to my calculations the approximate balance is $900," and demanding a deed for these two acres. He also, at the beginning of the trial and by permission of the court, filed an amended answer in which, among other things, he alleged that he had tendered to the plaintiff the balance of the purchase price for Parcel 1, that he was and is ready, willing and able to pay this balance, and that he "now brings" the sum of $900 into court "ready to be paid to the plaintiff." His offers were not accepted and no objections were made to them other than they were made too late.

The court found that an officer of the plaintiff corporation had informed the defendant before the agreement was entered into that a dam had been constructed on the Santa Ana River; that such a dam had in fact been constructed; that the flooded condition of this land which developed in March of 1941 was due to no fault on the part of the plaintiff; that defendant, by his subsequent conduct, had waived any possible misrepresentation; and that by discussing the terms of another agreement some fifteen months later the defendant had waived any objection he may have had to the condition of the land in question. As conclusions of law, it was found that the defendant had waived any objections to previous representations as to the condition of the property by attempting on September 2, 1942, on December 14, 1942, and on December 16, 1942, to purchase a part or all of Parcels

1 and 2; that at each of said times the defendant was in default under said contract; and that the plaintiff was entitled to judgment quieting its title. Judgment was entered quieting title to both parcels of land in the plaintiff and this appeal followed.

The original contract provided that time was of the essence. However, the first and only payment after the down payment was made and accepted some four weeks late. Apparently, the appellant had a more or less valid reason for seeking an adjustment before making the subsequent payments. The respondent seems to have recognized that there was some justice in his position although it disclaimed full responsibility for the situation which had arisen. In any event, it attempted to adjust the matter and entered into negotiations which were continued for about a year and a half and long after the final payment became due under the terms of the contract. By its own actions the respondent waived strict performance in accordance with the terms of the contract and it was therefore necessary for the respondent to give notice to the appellant before it could again require strict performance or claim a forfeiture for a failure in that regard.

A further consideration is that the respondent allowed the matter to rest until long after the final payment was due on the purchase price, during which time its negotiations with the appellant were continued and during which it continued to recognize the original agreement as still in force, as shown by the fact that it filed an action in August, 1942, seeking to recover the balance of the purchase price provided for therein. It was held in *Boone* v. *Templeman*, 158 Cal. 290 [110 P. 947, 139 Am.St.Rep. 126], that where such a contract makes the purchase price payable in instalments and the deed is to be made when the whole is paid, and where the vendor allows the full purchase price to become due, the payment of the purchase price becomes a dependent and concurrent condition with the giving of a deed and the vendor must tender a deed as a condition to declaring a forfeiture or to maintaining a suit for the purchase price. That rule has been followed in many cases since that time. In *McCartney* v. *Campbell*, 216 Cal. 715 [16 P.2d 729], this rule was applied and it was held that where the vendor had still recognized the contract as in existence after a default in making payments he had no right to commence a quiet title action without a prior demand of performance or a tender of a deed. In a number of cases it has been held that where all of the instalments

were past due a vendor could not maintain a quiet title action until he had tendered a deed. (*Bank of America* v. *Ries,* 128 Cal.App. 75 [16 P.2d 1018] ; *Ohanian* v. *Kazarian,* 123 Cal. App. 196 [11 P.2d 42] ; *Caspar Lumber Co.* v. *Stowell,* 37 Cal.App.2d 58 [98 P.2d 744] ; *Ross* v. *McDougal,* 31 Cal.App. 2d 114 [87 P.2d 709].) The same rule was approved in *Grimes* v. *Steele,* 56 Cal.App.2d 786 [133 P.2d 874], although it was there held that a tender of a deed would have been unavailing.

The circumstances of this case are such as to bring it within these equitable rules and to make their application peculiarly appropriate. Assuming that the appellant was actually in default, this is not the controlling fact. The respondent recognized that he had a grievance and acquiesced in the delay, at least to a large extent, and it must be held, in view of the acts of the respondent, that there was such a suspension of the right of forfeiture that it could only be revived by the giving of a definite and specific notice of an intention to rely on that right, or by the tender of a deed.

Nor do we agree with the respondent's contention that the tender of a deed would have been useless. It is argued that the fact that the appellant did not pay the amount due when the justice court action was filed sufficiently indicates that the tender of a deed would have been an idle act. The giving of a notice or the tender of a deed was as much a requisite for maintaining the justice court action as it was for this action, which was later filed. The fact that the appellant stood upon his rights at that time, if he did, cannot be said to indicate that he would not have responded to a proper tender, had it been made, or that he would not then have done the thing necessary to protect his rights. Even without the notice or tender to which he was entitled, the appellant made repeated efforts to pay the full amount due for Parcel 1 and to obtain a deed thereto, before this action was tried. This not only indicates that a tender of a deed would have accomplished its purpose but presents an equitable situation which we think required the court to apply the well established rules and to refuse to quiet respondent's title to Parcel 1.

A different situation appears with respect to Parcel 2. The appellant had not agreed to purchase that land, and there is no question of default, waiver, notice or tender of deed in that connection. He simply had an option to purchase

that land at $500 an acre, payable in cash, provided this was done not later than September 6, 1942. While he notified the respondent that he exercised his option it does not appear that he paid or tendered the necessary amounts, or that he otherwise complied with the option agreement. We are pointed to nothing which in any way indicates any error affecting that part of the judgment which relates to Parcel 2.

For the reasons given, that part of the judgment relating to Parcel 2 is affirmed, and that part of the judgment which relates to Parcel 1 is reversed.

Marks, J., and Griffin, J., concurred.