LEDWICH, J.
 

 Defendants' appeal from a judgment of the municipal court in favor of plaintiff in an unlawful detainer action brought under section 1161a, subdivision 3, of the Code of Civil Procedure by plaintiff, the purchaser at a sale under a deed of trust. The promissory note is dated October 12, 1946, in the principal sum of $12,500, payable in monthly installments of $100, or more, each month, commencing November 15, 1946. The note provides “that each installment when paid
 
 shall
 
 be applied by the holder hereof, first so much thereof as shall be required, to the payment of interest accrued . . . and the balance thereof to the repayment of said principal sum.” The note was made payable to plaintiff and her since deceased husband, as joint tenants.
 

 
 *Supp. 850
 
 The note and deed of trust were executed by one Rogers and wife, as “Trustor.” They sold and conveyed the property to defendants about September 15, 1949. The balance of principal then unpaid was $10,203.41, and interest was then paid to August 15, 1949. At that time Rogers and wife had paid approximately $2,300 on principal and all interest to August 15, 1949, or a total of approximately $4,100. If Rogers had paid plaintiff $100 every month, his total payments would have been $3,400 on September 12, 1951, so Rogers had then' paid approximately $700 on principal in excess of what the note required.
 

 In response to a request to do so, on September 12, 1949, plaintiff deposited in escrow in connection with the purchase of the property by defendants from Rogers and wife, a statement signed by her that the balance then owing on the loan was $10,203.41 and interest was paid to August 15, 1949, as aforesaid. She made no mention of any previous defaults by Rogers and wife, or said anything to indicate that she did not consider the loan in good standing. The payment book was not deposited in escrow- and defendants did not receive it until they made their first payment of $100 on October 13, 1949, when it was mailed to them by plaintiff, without comment.
 

 The payment book wherein all entries were made by plaintiff, and the endorsements on the note by plaintiff disclose that Rogers and wife on November 10, 1946 (less than one month after the date of the note) paid plaintiff and her husband $1,152.05, of which amount $1,089.55 was credited to principal, thereby reducing the balance of principal as of November 10, 1946, to $11,410.45.
 

 The payment book also shows that in 1948 Rogers and wife made six payments of interest only, the last of these payments being entered in the book on June 18, 1948, which paid interest to May 15, 1948. The book further shows that from June 22,1948, to and including July 11,1949, Rogers and wife made 12 monthly payment of $100 each, and the payment on July 11 paid interest to May 15, 1949. On August 30, 1949, two payments of interest only are entered in the book, which shows interest paid to July 15, 1949. On September 12, 1949 (the date plaintiff placed in escrow her statement above mentioned), the book shows $104 paid, $51.28 thereof being credited to interest to August 15, 1949 (which was current), and $52.72 to principal, leaving a balance unpaid of principal of $10,203.41 (which was the condition of the loan when defendants acquired title to the property).
 

 
 *Supp. 851
 
 Defendants paid $100 a month in October, November, December of 1949, and January and February of 1950, the last of these payments being made February 26, 1950. The last two of these payments were made after the 15th of the month, but plaintiff made, no objection to that. In accordance with her previous custom, .she credited approximately half of each $100 payment on interest to the 15th of the previous month and the balance on principal, so that on February 26, 1950, the book shows that interest was paid to January 15, 1950.
 

 Had plaintiff applied the February payment first to the payment of accrued interest, as the note provides, interest would have been paid to February 15, 1950, and been current. The only default by defendants on the note would then be approximately $50 in the payment of principal. In any event the total default of defendants in payments on the note itself, after the payment of February 26, 1950, was $50, whether the default be considered as one in payment of principal, or interest.
 

 The defendants, however, were then in default in the payment of the first installment of taxes, $148.83, so that their total default was less than $200 on March 7, 1950.
 

 On March 7, 1950, the plaintiff, through her attorney wrote the defendants a letter stating:
 

 “You are delinquent in the matter of current payments under the deed of trust plus a
 
 small .balance
 
 due prior to the time you purchased the property. In addition the taxes for the first installment of the current year in the amount of $140.41 plus $8.42 penalty are unpaid.
 

 “I am instructed to take such proceedings as may appear to me to be appropriate unless you bring your payments to her up to date and pay the taxes forthwith. You will please govern yourself accordingly.”
 

 Defendants made no reply to this letter. On March 24th defendants mailed plaintiff a check for $50.05, stating it was “for interest for month of March. If amount is incorrect, please advise.” Plaintiff made no response to this letter, but on March 26,1950, as had been her custom, she entered the interest of $49.77 paid for one month, to February 15, 1950. The next day, on March 27, 1950, plaintiff signed a notice of default and intention to sell under the deed of trust. She recorded this notice on March 29,1950.
 

 Neither plaintiff nor her attorney ever mailed a copy of this notice to defendants, or ever advised defendants in any manner, orally or written, that such notice had been recorded.
 
 *Supp. 852
 
 Defendants had no knowledge thereof at all until about the 9th or 10th of August, 1950, when they learned that their property was being advertised for sale from a broker. Plaintiff’s attorney was substituted as trustee on August 8, 1950. Notice of sale was published on August 9, 1950, and posted on the property on August 10, 1950, and the sale held October 5, 1950, it having been postponed at the request of defendants ’ attorney for 30 days.
 

 Plaintiff mailed a copy of the recorded notice of default to the original trustors, Rogers and wife, at the place specified by them in the deed of trust, namely, the property described therein, 5262 Foothill Boulevard, Oakland, California, which plaintiff knew was the residence of defendants. Defendants never saw or heard of this notice until after the notice of sale was published.
 

 After plaintiff recorded the notice of intention to sell, she received from defendants and credited on the payment book three payments of $100 each and one payment of $50. She credited interest paid to the 15th of the previous month and the balance on principal, as had been her invariable practice with Rogers and defendants. These payments were entered as follows:
 

 Pays Interest up lo:
 

 April 27, 1950—$100.00.........................3-15-50
 

 May 31 1950— 50.00.........................4-15-50
 

 June 28, 1950— 100.00.........................5-15-50
 

 July 31, 1950— 100.00.........................6-15-50
 

 Defendants did not pay an insurance premium of $14.34 in April. Plaintiff paid this premium and added the amount to the balance of principal and so advised defendants. Defendants defaulted in the payment of the second installment of taxes in April, 1950.
 

 When plaintiff received the $100 payment in April, she wrote defendants that it was not the April payment, and that she had paid the $14.34 insurance premium and .added it to the principal. She also wrote “How about the taxes?” She did
 
 not
 
 mention anything about the recorded notice of default, or any previous default by Rogers.
 

 The court found (Finding II) that defendants were “in default” on March 29th “in that they failed to pay $50.00 due on March 15, 1950” and failed to pay the first installment of taxes of $148.83. It further found that on said date defendants
 
 “had not paid
 
 arrearages which had accrued
 
 prior to the purchase of said real property
 
 by defendants in the sum of $500.00 or more.”
 

 
 *Supp. 853
 
 The court found (Finding VIII), (in accordance with the uncontradicted evidence), that it was true “that defendants did not discover the commencement of the foreclosure proceedings until August 10, 1950 after the first publication of the notice of sale, and defendants were informed regarding said publication by a friend who had read the notice in the Inter-City Express.” The court further found (Finding IV) that it was untrue that plaintiff deliberately with intention to prevent defendants from reinstatement of the loan “concealed” from defendants the recordation of said notice of intention to sell.
 

 Defendants’ Pleadings
 

 The defendants, in their answer, pleaded three “separate and affirmative” defenses. In their first affirmative defense, they pleaded that they had made payments of $100 in April, June and July of 1950 and $50 in May of 1950, which payments plaintiff accepted without informing defendants of the recordation of the said notice of default and intention to sell and while defendants did not know of the existence thereof and that by plaintiff’s “concealment” of the recordation of said notice defendants were prevented from exercising their rights under section 2924 of the Civil Code to cure their default in the payment of the taxes and $50 default in payment on the note. Defendants further allege that they were at all times ready, able and willing to pay “taxes and any other arrearage” there may have been and offered and tendered said money in their answer and also offered and tendered $100 each for payments for the months of August, September and October, 1950.
 

 In their “second and affirmative defense” defendants alleged- that plaintiff had waived any claimed default by the acceptance of the sum of $350, as aforesaid, in monthly payments, after recordation of the said notice.
 

 ’ The “third and separate defense” is that plaintiff failed to comply with the provisions of section 2924b of the Civil Code by failing to mail to defendants a copy of the notice of intention to sell and a copy of the substitution of plaintiff’s attorney as trustee. Defendants did not file for record a request for notices.
 

 The Defense of Estoppel
 

 The argument on appeal centered principally on the defense of equitable estoppel. The court found, or concluded as a matter of law against defendants on this defense.
 

 
 *Supp. 854
 
 The question, presented by this defense is whether by her acceptance of the four payments aggregating $350 and her conduct toward defendants after the recordation of the notice of default plaintiff, in equity and good conscience, is estopped to assert, in this unlawful detainer action, the validity of title she acquired at the trustee’s sale. The trial court found that she was not so estopped.
 

 Respondent contends that this equitable defense of estoppel could not be properly tried in this unlawful detainer action, and that even if it could be tried in this action defendants “would have to both plead and prove a willingness to do equity.” The “equity” referred to by plaintiff is payment of the full amount of the loan and costs of foreclosure.
 

 In support of plaintiff’s contention that the .'.municipal court could not properly try the issue of estoppel, which in this case arose after the recordation of default, plaintiff cites
 
 Cheney
 
 v.
 
 Trauzettel,
 
 9 Cal.2d 158 [69 P.2d 832], and
 
 Seidell
 
 v.
 
 Anglo-Calif. Tr. Co.,
 
 55 Cal.App.2d 913 [132 P.2d 12]. Neither of these cases involved the jurisdiction of the
 
 municipal court
 
 of equitable defenses in this type of action.
 

 The Cheney case appears to be the leading case in California. It is cited and distinguished in the Seidell case. It is also cited in
 
 Delpy
 
 v.
 
 Ono,
 
 22 Cal.App.2d 301 [70 P.2d 960], and
 
 Higgins
 
 v.
 
 Coyne,
 
 75 Cal.App.2d 69 [170 P.2d 25]. The Cheney case declared this basic rule, “matters affecting the validity of the trust deed or primary obligation itself, or other basic defects in the plaintiff’s title, are neither properly raised in this summary proceeding for possession nor are they concluded by the judgment.” In the Cheney case the defense, which was held properly stricken out by the trial court, was that the trustee’s sale “was merely colorable in pursuance of an agreement to effect a transfer of property from execution at the hands of a judgment creditor, and that plaintiffs did not thereby acquire a valid title.” In the Delpy case the defense held not triable in the unlawful detainer action was that the deed of trust was’from its inception a conspiracy between the parties to evade the Alien Land Law.
 

 The Higgins case (which involved the jurisdiction of a Class A Justice Court), it was admitted there was a “purported” sale in accordance with section 2924 of the Civil Code, but denied the execution of the deed of trust by defendant’s grantor and affirmatively alleged it was a forgery, a matter going to the validity of the deed of trust itself.
 

 In the Seidell case, it is somewhat difficult to determine
 
 *Supp. 855
 
 what if any equitable issues were raised in the unlawful detainer action. The majority opinion states “if the answer contained equitable issues of fraud, as the Supreme Court said in the Cheney case,
 
 supra,
 
 they had no place in that unlawful detainer proceeding, and the findings thereon were immaterial and may therefore be disregarded. They were harmless. ’ ’ In the Seidell case the court held that the judgment in the unlawful detainer action was res adjudicata as to any irregularities in the foreclosure proceedings and that no equitable issues were tendered or litigated in the unlawful detainer action.
 

 The equitable defense here raised does not affect “the validity of the trust deed or primary obligation itself,” nor does it involve “other basic defects in the plaintiff’s title” (Cheney case). Rather, it involves whether “the property has been duly sold . . . and the title under the sale has been duly perfected” (Code Civ. Proc., § 1161a(3)). The defense of estoppel here involved is one that arose during the course of the foreclosure proceedings, after the commencement thereof by the recordation of the notice of default and prior to the conclusion thereof by the sale and trustee’s deed.
 

 None of the cases cited on jurisdiction of equitable issues in this type of action has passed upon this factual situation, where pleaded as defensive matter.
 

 The reason given in the decisions that equitable issues may not be tried in an unlawful detainer action is that the trial of such issues would change the summary character of the action. In this connection it should be borne in mind that the unlawful detainer statutes, including section 1161a (3), Code of Civil Procedure, are purely statutory remedies created by the Legislature (see
 
 Hewitt
 
 v.
 
 Justice’s Court,
 
 131 Cal.App. 439 [21 P.2d 641]). This being so, it is competent for the Legislature to determine the scope of the issues that may be tried in such an action. The Legislature has spoken on that subject, as late as 1949, by adopting section 89, Code of Civil Procedure, fixing the jurisdiction of municipal courts.
 

 .. None of the cases cited involve the jurisdiction of municipal courts or consider, or mention, section 89, Code of Civil Procedure. This section was enacted in 1933 in the same language as now appears in subdivision (g)(3) of that section. This subdivision gives the municipal court original jurisdiction “of
 
 all cases in equity
 
 when pleaded as defensive matter
 
 in any
 
 
 *Supp. 856
 

 case properly pending
 
 in such municipal courts.” (Italics ours.)
 

 If this language
 
 “all
 
 eases in equity when pleaded as defensive matter” is construed according to its plain tenor, clearly the municipal court had jurisdiction of the defense of estoppel here claimed.
 

 The rental value alleged is $100 per month, so this case was “properly pending” in the municipal court (Code Civ. Proc., § 89, subd. (d)). There is no language in section 89 that in any way restricts the broad language “all cases in equity when pleaded as defensive matter. ’ ’
 

 It is true that construed according to its plain and comprehensive language the section gives a municipal court jurisdiction of equitable defenses.which has been held in the past the superior court, a court of general jurisdiction, did not possess, but that is a legislative and not a judicial matter
 
 (Hewitt
 
 v.
 
 Justice’s Court, supra).
 
 In fixing the jurisdiction of municipal courts, the Legislature acted pursuant to authority conferred on it by the Constitution.
 

 We think it is significant that the Legislature in fixing the jurisdiction of class A and class B Justices’ Courts in unlawful detainer actions has not used the same broad language it has used in fixing the jurisdiction of municipal courts, namely,
 
 “all cases in equity.”
 
 Instead, it has limited the jurisdiction of such justices’ courts in unlawful detainer actions to a determination of “any question
 
 properly involved therein”
 
 (see Code Civ. Proc., § 112, both subds. (b)). (Italics ours.)
 

 The Supreme Court in
 
 Jacobson
 
 v.
 
 Superior Court,
 
 5 Cal.2d 170 [53 P.2d 756] has given the words “all cases in equity when pleaded as defensive matter” the broad interpretation above mentioned. While that was not an unlawful detainer action the reasoning of the court therein is directly applicable here. At page 173 the court states:
 

 “But the Brix case was decided upon appeal from a judgment entered prior to the amendment of section 89 of the Code of Civil Procedure in 1933. This section as amended provided that: ‘ Each municipal court shall have jurisdiction of all cases in equity when pleaded as defensive matter, in any case properly pending in such municipal courts. ’ Under this section as it now reads, the jurisdiction of the municipal court has been extended to include the determination of any equitable issue when pleaded as defensive matter in any case properly triable in such municipal court. The matters
 
 *Supp. 857
 
 therefore contained in the cross-complaint in said action if they are mere matters of defense, were properly cognizable by the municipal court, and the jurisdiction over said court was in that court and not in the superior court. By an examination of the pleadings filed in said action it conclusively appears that the equitable matters pleaded therein merely tend to show that the plaintiff therein was not entitled to recover anything whatever in said policy of insurance for the reason that he was in default in the payments of the premiums called for by said policy. These matters were merely defensive matters and therefore properly cognizable by the municipal court as provided by the 1933 amendment to said section 89 of the Code of Civil Procedure. ’ ’
 

 Again on page 174 the court says: “On the other hand it seems clear to this court that the object of this amendment to the section was to give to municipal courts exclusive jurisdiction over all cases in which equitable matters are pleaded as a defense, when the original jurisdiction of such cases is in the municipal court.”
 

 There is, of course, no question here that this action was properly commenced and was “properly pending” in the municipal court. As in the Jacobson case,
 
 supra,
 
 defendants here seek no affirmative relief, but to defeat plaintiff’s suit for possession of the property. They pray simply “that plaintiff take nothing.” We conclude, both under the plain and broad language of section 89, Code of Civil Procedure, and the authority of the Jacobson case,
 
 supra,
 
 the municipal court had jurisdiction to try the equitable defense of estoppel in this action.
 

 If the finding that defendants
 
 “had not paid”
 
 the arrearages of Rogers of $500, or more, is considered as a finding that defendants were “ill default” because they had not paid these arrearages, it is an erroneous conclusion and is contrary to law. The nonpayment of approximately $300 of this $500 arrearages occurred prior to June, 1948, after which time plaintiff accepted 12 consecutive monthly payments of $100 from Rogers and also all interest to August 15, 1949. She also accepted five consecutive monthly payments of $100 each from defendants, without ever mentioning any Rogers arrearages to defendants. This course of conduct on her part and the statement she placed in escrow constitute both a waiver and estoppel by every principle of equity and good conscience. She could never revive these defaults, even
 
 *Supp. 858
 
 against Rogers, without previous demand and notice given within a reasonable time after such defaults occurred. A reasonable time had long since elapsed before the notice of default was recorded.
 
 Bledsoe
 
 v.
 
 Pacific Ready Cut Homes, Inc.,
 
 92 Cal.App.
 
 641,
 
 645 [268 P. 697].
 

 In the Bledsoe case (a trust deed case), the plaintiff defaulted in the payment of principal of $500 on November 1, 1924, but thereafter made several monthly payments of $69 each, which the defendant accepted without objection, but at the same time wrote numerous letters to plaintiff demanding payment of $500. At page 645 the court states:
 

 “To avoid being charged with a waiver, the defendant was bound to give notice before proceeding to foreclose. As the defendant did not collect the $500 payable November 1, 1924, it was bound to make a formal demand therefor. It was bound to stay its hand a reasonable length of time so that plaintiff could comply with the terms of the contract.”
 

 Gonzalez
 
 v.
 
 Hirose,
 
 33 Cal.2d 213 [200 P.2d 793] declares the same rule. It holds that in a contract for the sale of land, where time is agreed to be of the essence, defaults in time of payment are waived by a course of conduct of crediting payments on account of interest and principal without regard to time factors, and that the time element could only be reestablished by definite notice. At page 216 the court says:
 

 “Since the law looks unfavorably upon forfeitures, waiver of the time clause will be deemed to be a waiver of the forfeiture unless the time element is first reestablished by definite notice.
 
 (Boone
 
 v.
 
 Templeman,
 
 158 Cal. 290 [110 P. 947, 139 Am.St.Rep. 126];
 
 City of Los Angeles
 
 v.
 
 Krutz,
 
 170 Cal. 344 [149 P. 580];
 
 McCartney
 
 v.
 
 Campbell,
 
 216 Cal. 715, 720 [16 P.2d 729]; Rest., Contracts, § 311.) Admittedly no such notice was given.”
 

 We see no reason why the same principle does not apply to obligations secured by deeds of trust. The Bledsoe ease holds that it does.
 

 When plaintiff placed her statement in escrow respecting the Rogers loan, it was in response to an inquiry regarding that loan. It requested information on a matter peculiarly within plaintiff’s knowledge. It was plaintiff’s duty not to conceal any facts but to make a full and fair disclosure thereof. This rule applies independently of any confidential relationship between the parties.
 
 (Rogers
 
 v.
 
 *Supp. 859
 

 Warden,
 
 20 Cal.2d 286, 289 [125 P.2d 7];
 
 Bank of America
 
 v.
 
 Greenbach,
 
 98 Cal.App.2d 220, 224 [219 P.2d 814].)
 

 In
 
 Rogers
 
 v.
 
 Warden, supra,
 
 at page 289 the court states:
 

 “But the rule has long been settled in this state that although one may be under no duty to speak as to a matter, ‘if he undertakes to do so, either voluntarily or in response to inquiries, he is bound not only to' state truly what he tells but also not to suppress or conceal any facts within his knowledge which materially qualify those stated. If he speaks at all he must make a full and fair disclosure. ’
 
 (Sullivan
 
 v.
 
 Helbing,
 
 66 Cal.App. 478, 483 [226 P. 803];
 
 Pohl
 
 v.
 
 Mills,
 
 218 Cal. 641, 654 [24 P.2d 476];
 
 American Trust Co.
 
 v.
 
 California Western States Life Ins. Co.,
 
 15 Cal.2d 42, 65 [98 P.2d 497].) ”
 

 The finding that defendants “had not paid” the Rogers defaults is an immaterial factor in this case. That finding and the evidence on which it is based lend no support whatever to the judgment herein. The only defaults that are material to this ease are the defaults of the defendants, which the trial court found were $198.83 at the time the notice of default was recorded.
 

 Respondent contends that the acceptance by plaintiff of the payments of $350 after recordation of the notice of default was not a waiver by her of the default of defendants in the payment of $50 principal and $148 taxes, and cites the following cases:
 
 Sellman
 
 v.
 
 Crosby,
 
 20 Cal.App.2d 562 [67 P.2d 706];
 
 Harris
 
 v.
 
 Whittier Bldg. & Loan Assn.,
 
 18 Cal.App. 2d 260 [63 P.2d 840];
 
 Birkhofer
 
 v.
 
 Krumm,
 
 27 Cal.App.2d 513 [81 P.2d 609];
 
 R. G. Hamilton Corp.
 
 v.
 
 Corum,
 
 218 Cal. 92 [21 P.2d 413].
 

 The principle relied upon is stated in substantially the same language in all the cases. In the Sellman case the court says:
 

 “In other words, no implied waiver results from the mere acceptance of such partial payments.”
 

 In the Whittier case the court in holding there was no waiver under the facts in that case says: “This claim,
 
 under the facts of this case,
 
 is without merit, because it has been repeatedly held that the mere acceptance of
 
 interest or a small amount on the principal
 
 after the notice of forfeiture is given will not
 
 of itself
 
 revive the contract.” (Italics ours.)
 

 None of the cases cited by plaintiff which held there was no waiver by the mere acceptance of partial payments presented a factual situation anything like that presented in the instant case and the holding of “no waiver” in those cases must be considered in relation to the facts before the court. In the
 
 *Supp. 860
 
 Whittier and Hamilton eases, the court was careful to so limit its language. In all of those cases the defaults involved were defaults of the borrower personally, and in none of them does it appear that the borrower was ignorant of the recordation of the notice of default.
 

 In the Sellman ease the plaintiff was in default in 11 monthly payments which he agreed to.pay from monies to be received from a lawsuit and failed to do so after receiving them. Furthermore, each installment paid after the recordation of the notice of default was credited when paid to the installment longest past due, clearly indicating to plaintiff that the loan was considered by the lender as a delinquent loan in default at all times.
 

 In the Hamilton case the borrower never made a full monthly payment and was in default for over 12 months, or nearly $24,000 in payment of principal, interest and advancements. The court held, “under these circumstances,” the lender had shown leniency and there was no waiver.
 

 In
 
 Harris
 
 v.
 
 Whittier Bldg. & Loan Assn.,
 
 $60 was paid
 
 before
 
 the recordation of the notice of default, nothing afterward, and the borrower had full knowledge that the notice of default was recorded.
 

 In the Birkhofer case, one of two delinquent interest payments which existed when the notice of default was recorded was paid and this was held not to be a waiver.
 

 . The only reasonable inference that can be drawn from the evidence in the instance case is that plaintiff pursued a course of conduct after the recordation of the notice of default calculated to withhold from defendants that fact so that she might accelerate the maturity of the loan after the lapse of the three months allowed the defendants to reinstate the same under section 2924c of the Civil Code. (Enacted 1933 and 1935.) Under this section the defendants had a right during said three months to reinstate the loan upon the payment of less than $200 and attorney’s fees not to exceed $50, and any other arrearages that occurred after the recordation of the notice of default. This was a valuable right and one which the borrower could not waive by express agreement at the time of the loan or any renewal thereof, for such agreement is “void and of no effect.” (Civ. Code, § 2953, enacted 1937.) Such a waiver is against public policy.
 

 Plaintiff was at all times acting under the advice of her attorney. She occupied the superior position. She knew of defendants’ rights to reinstate the loan, for the knowledge of her attorney is chargeable to her, but her conduct indicates
 
 *Supp. 861
 
 quite clearly that she was fully aware personally of this right of defendants. By her statement placed in escrow and by her acceptance of five consecutive monthly payments of $100 each from defendants and entering them in the book as she did, she represented to them, impliedly, at least, that the loan was in good standing when defendants purchased the property. No other reasonable inference can be drawn from her conduct.
 

 In addition to accepting and entering payments of $350 on the payment book and returning it as usual, after recordation of the notice of default, when one defendant wrote her in April that $100 payment made that month was the April payment, she adroitly replied: “This is not the April payment.— How about the taxes?” When she paid an insurance premium of $14.34 in April, without requesting payment by defendants, she merely advised them that she had done so and had added it to the principal. She knew that defendants and not Rogers occupied the property. She mailed the statutory notice to Rogers at the property where she knew the defendants resided, but refrained from mailing the defendants a copy and carefully avoided ever mentioning to them that she had recorded the notice of default. Her statements respecting the April payment of $100 conveyed no information to defendants that their loan was in the serious jeopardy created by the recordation of the notice of default. It would naturally have the effect on defendants’ minds that aside from payment of the taxes and not being
 
 “the April payment,”
 
 the loan was otherwise in good standing.
 

 Defendants were not making “small” payments or payments of interest only, but in three out of the four months following the recordation of the notice defendants made and plaintiff accepted the full monthly payments of $100 called for by the note, which plaintiff entered as usual in the payment book and returned it to the defendants as usual. Plaintiff by her action and her silence lulled the defendants into a sense of security while she sat back and waited the lapse of the three months in which the defendants might reinstate the loan for a comparatively small amount, so «that she could leave them in the position of being compelled to pay the full amount of the loan, or have their property sold at a trustee's sale.— If this conduct does not amount to waiver, it has all the elements of equitable estoppel.
 

 Although waiver and equitable estoppel are not always distinguished in the cases, they rest upon different legal principles. There may be an equitable estoppel where there
 
 *Supp. 862
 
 is no waiver in the technical sense. Waiver is a voluntary relinquishment, expressly or impliedly, of a known.right and depends upon the intention of one party only. Equitable estoppel is based upon the fundamental principle that “one’s conduct has induced another to take such a position that he will be injured if the first party is permitted to repudiate his acts.”
 
 (Bastanchury
 
 v.
 
 Times Mirror Co.,
 
 68 Cal.App.2d 217, 240 [156 P.2d 488].)
 

 “An estoppel may arise also from silence as well as from words or conduct. But this is only where there is a duty to speak, and where the party upon whom such duty rests has an opportunity to speak, and, knowing that the circumstances require him to speak, remains silent.” (10 Cal.Jur. pp. 631-632; see, also,
 
 People
 
 v.
 
 Ocean Shore Railroad Inc.,
 
 32 Cal.2d 406, 407, 421-422 [196 P.2d 570, 6 A.L.R.2d 1179];
 
 Merry
 
 v.
 
 Garibaldi,
 
 48 Cal.App.2d 397, 401 [119 P.2d 768];
 
 Crittenden
 
 v.
 
 McCloud,
 
 106 Cal.App.2d 42, 48 [234 P.2d 642].
 

 “ It is not necessary that the duty to speak should arise out of any agreement, or rest upon any legal obligation in the ordinary sense. Courts of equity apply in such cases the principles of natural justice, and whenever these require disclosure they raise the duty and bind the conscience and base upon the omission an equitable forfeiture to the extent necessary to the protection of the innocent party.” (10 Cal.Jur. p. 632.)
 

 Plaintiff’s acceptance of the payments made after the recordation of the notice of default, taken in connection with her conduct toward defendants, required her in equity and good conscience to speak, and to tell the defendants of her action in recording the notice of default while there was time for them to reinstate the loan under section 2924c of the Civil Code. She was seeking to invoke a forfeiture against them. She knew her rights and the defendants’ rights and knew that the defendants would lose their valuable right to reinstate the loan for a small amount, if she could only keep them in ignorance of her action until three months had elapsed. She had ample opportunity to speak, but would not do so, except in a manner to lull the defendants into a sense of security.
 

 When plaintiff did speak, as she did in April, she did not make a full and fair disclosure of all the facts respecting the defaults that she then claimed. Her conduct, as shown by the evidence in this case, was calculated to and succeeded
 
 *Supp. 863
 
 in lulling the defendants into a sense of security, to their serious injury. It left them where they were faced with paying the full amount of the loan, or a sale of their property, within a very short time. Plaintiff’s conduct, as disclosed by the evidence, is so shocking to the conscience that no court should permit her to achieve the goal that she seeks in this ease. The ultimate finding, or conclusion of the trial court, that plaintiff is not estopped is unsupported by the evidence.
 

 After defendants learned that their property was advertised for sale, a postponement of the sale for 30 days, requested by defendants’ attorney, was consented to by plaintiff. Plaintiff contends that because of this postponement, defendants had to “both prove and plead a willingness to do equity,” which plaintiff states is payment of the loan and costs in full. In support of this contention, plaintiff cites
 
 Mack
 
 v.
 
 Golino,
 
 95 Cal.App.2d 731 [213 P.2d 760], and
 
 Leonard
 
 v.
 
 Bank of America,
 
 16 Cal.App.2d 341 [60 P.2d 325].
 

 Both these cases were actions by a trustor in equity to set aside a trustee’s sale, under a deed of trust. In both eases the attack on the sale was solely on the sufficiency of the notice of sale. In the Leonard case the publication of notice was for 17 days only, instead of the required 20 days. In the Mack case it was claimed that it was an insufficient posting of the notice of sale.
 

 The court held, in both cases, that the sale was merely “voidable,” because of the insufficient notice. Plaintiff in each case was seeking equitable relief and was denied relief .from the “voidable” sale because of a total failure to offer to do equity, by paying the amount due on the loan, which in the Leonard case was admitted to be the full amount thereof.
 

 Here, the defendants in their answer offered to pay their own delinquencies in the payment of the note, the taxes and insurance. Since they were not chargeable with the Rogers defaults, this was all that they were required to do to do equity. There was no evidence that the defendants were not able to make the payment of their delinquencies.
 

 Here the defendants are not relying upon an insufficiency of the notice of the sale, but rely upon the proposition that plaintiff had no right at all to hold the sale because she was in equity and good conscience estopped from doing so.
 

 Counsel for plaintiff contends that the postponement of the sale for 30 days at defendants’ request amounts to a waiver, or estoppel, by defendants to question the validity
 
 *Supp. 864
 
 of the sale and cites and quotes from an extensive note in 2 American Law Reports 2d, pages 78 and 96.
 

 This note relates to judicial sales and the language quoted is that of the author of the note, and not of any court. The gist of the quoted language is that there
 
 “may”
 
 be an estoppel or waiver of a right to object to defects in the sale, if the facts of the particular case are such as to warrant the finding of waiver or estoppel.
 

 The note cites the California case of
 
 Summerville
 
 v.
 
 March,
 
 142 Cal. 554 [76 P. 388, 100 Am.St.Rep. 145].
 

 There is nothing in that case in any way resembling the present case. It merely holds that a mortgagor was not entitled to have the mortgage sale set aside for the sole reason that the property was sold in two separate parcels, instead of one parcel, without a showing that it would have brought more money if sold as a whole.
 

 Here there is nothing in the correspondence between the attorneys for the parties relating to the postponement of the sale for the short space of 30 days, which indicates that this extension was granted on the understanding or condition that defendants thereby, waived any rights they had to object to the plaintiff holding the sale at all. No injury, or detriment appears to have been suffered by plaintiff by reason of the short postponement of the sale for 30 days. To hold that because defendants were unsuccessful in their efforts to refinance the whole loan during this 30 days, they lost a defense going to the right of plaintiff to sell the property at all, is to sanction a forfeiture of the harshest kind, especially under the facts in this ease. No authority cited by plaintiff so holds.
 

 We conclude that the only reasonable inference from the evidence in this case is that plaintiff was estopped to sell the property and the finding of tne trial court to the contrary is not warranted by the evidence and is contrary to law. In view of our conclusion on the matter of estoppel, it is unnecessary to pass upon the other points for reversal raised by appellant. The judgment of the municipal court is reversed.
 

 Wagler, P. J., and Hoyt, J., concurred.